MARTHA A. VANZANT, Appellant, v. ISAIAH VANZANT, Appellee.

### APPEAL FROM MORGAN.

The act of 1857, amending the Homestead Act, requires that the wife of the householder shall sign a waiver or release of the homestead, before she can be affected by it.

The case of *Kitchell* v. *Burgwin et ux.*, in 21 Ill. R., page 40, examined and explained.

The release or waiver of the homestead must be express; the usual covenants in a deed cannot operate as such. The waiver may appear in the deed of conveyance, if clearly stated.

The usual form of acknowledgment will bind a husband; but that of the wife should show that the officer taking it fully informed her of her rights under the act, and that she voluntarily released or waived them.

The benefit of the act continues to the widow and children, until the youngest of them reaches majority.

A divorced woman, if she is the meritorious party in the controversy, and is entrusted with the children, will enjoy the benefit of it.

An injunction obtained by a wife against her husband, pending a divorce, will prevent all incumbrance as well as a conveyance of the property.

Actual residence on the property is not always indispensable.

THE facts of this case are stated in the opinion of Mr. Justice BREESE.

The decree was pronounced by WOODSON, Judge, at March term, 1859, of the Morgan Circuit Court.

D. A. AND T. W. SMITH, for Appellant.

J. KETCHAM, for Appellee.

BREESE, J. The record in this case presents the following facts: On the 19th September, 1854, John A. Vanzant and Martha A., his wife, executed to Isaiah Vanzant a mortgage on a certain lot of ground in Jacksonville, in Morgan county, together with other property, not specifically described, to which Martha A. was entitled from the estate of her deceased father, to secure the payment of a note payable to Isaiah Vanzant by John A. Vanzant, for the sum of two hundred and eighty dollars, with interest from Feb. 6th, 1854, until paid, and also another note Isaiah Vanzant had executed, with John A. as his surety, payable to Henry G. Pleklefter, for six hundred and twenty-five dollars, with interest at ten per cent. It was acknowledged in the usual form, the wife, Martha A., relinquishing her dower. She, with her husband, was then living on the premises with their infant children. On the 9th of November, 1857, Martha A. Vanzant filed her bill in chancery for a divorce, and for alimony, and for an injunction to restrain her husband,

John A., from alienating the said lot and premises, and household furniture contained in them.    The injunction was allowed, and on the hearing, at the March term, 1858, a decree of divorce was granted her, the custody of the children committed to her, and that she have for alimony the real and personal estate described in her bill of complaint, which was the mortgaged lot and the household and kitchen furniture, and that the master in chancery should convey to her the said lot, which he did do on the 26th March, 1858, in pursuance of the decree.

On the twenty-first of August, 1858, following this decree and deed from the master in chancery, Isaiah Vanzant filed his bill to foreclose the mortgage above referred to, making John A. and his judgment creditors parties, but omitting to make Martha A. a party to the same, which, however, was done by an amendment made at the October term following.    Before she was made a party to this bill, to wit, on the 21st September, 1858, Martha A. Vanzant filed an original bill against Isaiah and John A. Vanzant, and the judgment creditors, stating, among other matters, her marriage with John A. and the birth of four children by him, and all living; that the lot in controversy was bought with her funds and conveyed to her then husband, John A., and was occupied by them as a homestead until November ninth, 1857, the day on which she had exhibited her bill for a divorce and alimony.    That she had joined in the mortgage, in 1854, to Isaiah Vanzant; that the lot, at the date of the mortgage, was the homestead; that it contained no waiver of the homestead right, and was not recorded until Nov. 10, 1858:    She then sets out the filing of the bill for divorce in Nov., 1857, and the proceedings and decree of the court thereon.

The bill states, that during the pendency of the proceedings for the divorce and alimony, the complainant and her children, from apprehension of some harm, did not occupy the premises, but resided, temporarily, with her step-father.    About one month before the decree passed in her favor, her husband, John A., had rented the premises to a tenant at ten dollars per month, who, immediately after the decree, attorned to her, and so continued; that she did not intend to abandon the homestead as a means of support, that, and the charity of her friends, being her only means.    She claims that she is the proper head and representative of the family, and as such, entitled to the protection of the homestead act in its true intent and meaning, the premises not being of the value of one thousand dollars.    She then states the judgments obtained by the defendants against John A. Vanzant, at periods between the fourth and twenty-fourth of March, 1858, amounting in all to $214.41, and those obtained on the

25th of March, 1858, amounting to $190.38, and alleges that these judgment creditors,· by filing transcripts of their judgments with the clerk of the Circuit Court, had issued and levied their executions upon these premises, and sold the same to two of said creditors, acting for themselves and for the other creditors, for eight hundred dollars, including the mortgage debt of Isaiah Vanzant. That the purchasers had full notice of all her rights, and of the master's deed to her, and of her written protest against the sale; that the debts were contracted by her then husband, John A. Vanzant, since July 4, 1851, and judgments confessed since the injunction was issued in her behalf, in the suit for a divorce, and prays that this sale may be vacated and the judgment creditors be] enjoined from proceeding irrespective of the homestead exemption act, and for general relief.

Isaiah Vanzant answers, there was due him, on the note and mortgage, the sum of three hundred and forty-four dollars and nine cents. The judgment creditors answer, admitting the marriage of complainant, and the birth of the children, and the purchase of the premises in September, 1854, and conveyance to John A. Vanzant, but deny that the purchase was made in consideration of funds of complainant, coming from the estate of her deceased father, or upon any other consideration than the same expressed in the deed, which, they do not allege, was furnished by John A. Vanzant or was his money. Admit residence on the lot until the bill was filed for a divorce, and that while the parties were living thereon they supplied the family with necessaries, relying upon the ownership of the premises being in John A. Vanzant, and trusting him as worthy of credit. They allege all the proceedings to be regular and legal, any claim of homestead exemption, by complainant or John A. Vanzant, to the contrary notwithstanding, and allege that the premises were not occupied, for a long time before they were sold, by John A. Vanzant or his family, so that the sale of it came within the provisions of the homestead exemption act.

. A replication was filed to this answer, and the two cases, one of *Isaiah Vanzant* v. *John A. and Martha Vanzant,* and the judgment creditors of John A. Vanzant, and the other of *Martha Vanzant* v. *John A. and Isaiah Vanzant,* and the same judgment creditors, proceeded *pari passu,* on proof being taken, to a final decree, which contains the proofs. That decree is as follows in substance :

On this 12th day of March, 1859, came the said Isaiah and John A. Vanzant, and Lewis Hatfield, and others, judgment creditors, by their solicitors, Berdan, Ketcham and McConnel, and the said Martha A Vanzant, by her solicitors, D. A. and T.

W. Smith, and the above causes, pertaining to the same subject matters, came on to be heard together, on the bill of the said Isaiah Vanzant, and note and mortgage therein referred to, the bill of the said Martha A. Vanzant, answers thereto by the said Isaiah Vanzant, Lewis Hatfield, and others, judgment creditors, and replication to said answers. It appeared to the court that there was due of date to the said Isaiah Vanzant, on said note and mortgage, $334.69. The said Martha A. Vanzant caused to be produced for the inspection of the court, and fully proved to the satisfaction of the court, all the proceedings of this court, as alleged in her bill. She also produced and proved, to the satisfaction of the court, the deed of James Berdan, special master, referred to in her bill. Charles Samples, late sheriff of this county, under oath, testified that he made the sale of the 28th of August, 1858, for $800, and that the trustees who purchased, had notice of her written protest against the sale. Jas. Green, under oath, testified in behalf of said Martha A. Vanzant, that she intermarried with the said John A. Vanzant some years since, and had, by him, four children, oldest born February 8th, 1848, youngest born September 22nd, 1856. That, on the 19th of September, 1854, in consideration of funds coming from the estate of the deceased father of said Martha A. Vanzant, one Pleklefter conveyed, in fee simple, to the said John A. Vanzant, the lot named in the bill, and that it has been paid for out of said funds, and that, from time of purchase to November 9th, 1857, said lot was occupied, as a homestead, by said John A. and Martha A. Vanzant and their said children, and that said lot, at time of purchase, was not, nor had it ever been, nor was it now, worth exceeding $1,000: That, during the pendency of suit for divorce and alimony, the said Martha A. Vanzant and her children, from apprehension of harm, did not occupy and possess personally the real and personal estate. That the said John A. Vanzant, about a month before the decree of divorce, rented the lot to a tenant, who, immediately after the decree, attorned to the said Martha A. Vanzant. That she and her children are residing temporarily (and have been since decree of divorce) in the family of witness, who is her step-father, as the best arrangement for the comfort of herself and children, and that their only means of maintenance are the occupancy or rents of said property, said personal property, their own efforts, and the charity of their friends. And the court being now sufficiently advised of and concerning the premises, doth order, adjudge and decree as follows, to wit:

That if the said Martha A. Vanzant shall not, in thirty days from this date, pay or cause to be paid, to the master in chancery of the county, the said sum of $334.69, with six per cent.

interest from this date, and costs of this suit, to and for the use of the said Isaiah Vanzant or assigns, that then the said master shall, on twenty days' notice by advertisement, etc., sell, redeemably as the statute provides, but irrespective of the provisions of the homestead exemption law, the said mortgaged premises known and described as, etc., and that the bill of the said Martha A. Vanzant be dismissed without prejudice, and that defendants in her bill recover their costs.

The errors assigned are: 1st, That the court did not vacate the sale of August 28th, 1858; 2nd, That the court did not enjoin the judgment creditors from proceeding irrespective of the homestead exemption law; 3rd, That the court decreed a a foreclosure of the mortgage to Isaiah Vanzant, irrespective of that law; and 4th, That the court dismissed the complainant's bill without prejudice.

At the time of the execution of this mortgage, the homestead exemption act was in full force. It provides, (Scates' Comp. 576,) "That in addition to the property then exempt by law from sale under execution, there shall be exempt from levy and forced sale, under any process or order from any court of law or equity in this State, for debts contracted after July 4th, 1851, the lot of ground and the buildings thereon occupied as a residence, and owned by the debtor, being a householder and having a family, to the value of one thousand dollars. Such exemption shall continue after the death of such householder, for the benefit of the widow and family, some or one of them continuing to occupy such homestead until the youngest child shall become twenty-one years of age, and until the death of such widow; and no release or waiver of such exemption shall be valid, unless the same shall be in writing, subscribed by such householder, and acknowledged in the same manner as conveyances of real estate are, by law, required to be acknowledged." By an act passed February 17th, 1857, (Scates' Comp. 577,) this section is "amended, by inserting, after the words 'subscribed by such householder,' the words 'and his wife, if he have one,' it being the object of this act to require, in all cases, the signature and acknowledgment of the wife, as conditions to the alienation of the homestead."

We understand this to mean, that the wife of the householder, if he has one, shall also sign the waiver or release before she can be affected by it.

In commenting on this statute, in *Kitchell* v. *Burgwin and Wife*, 21 Ill. R. 40, we intended to state the law as it then stood, without special reference to the time when the mortgage in that case was actually executed. At page. 46, of that opinion, we said, the wife must do something more than release her dower.

This is to be understood with reference to the law as it then stood, when the opinion was written. The mortgage in that case was in fact executed prior to 1857, and of course did not require the signature of the wife to a formal release or waiver of the homestead act, but it did of the householder under the act of 1851. The mortgage in this case was executed by the wife prior to 1857, and her formal release was therefore unnecessary ; but that of the husband, being a householder, was required, and cannot be dispensed with, so as to prevent the benefits to flow from it to the family, which were contemplated by the act. It is very manifest the controlling consideration with the legislature in passing the act, was the family of the householder—it was for their benefit rather than for that of the householder. It is made to survive to the widow and to the children until the youngest child shall become twenty-one years of age. But the householder could waive or release this right provided he did so in writing subscribed by him, and acknowledged in the same manner as conveyances of real estate are by law required to be acknowledged. In the case of Burgwin and Wife we have said : "It must appear that the privileges and advantages of the act were in the contemplation of the parties executing the deed, and that they were expressly released or waived in the mode pointed out in the statute." We wish to be understood as saying, that the waiver or release must be a formal one. The insertion in the deed of conveyance of the special or general covenants usually inserted, without express reference in the deed to this act, cannot operate as a release or waiver of it. There must be a writing expressly manifesting the intention to waive or release, and that writing must be signed by the party releasing, and it must be acknowledged as an ordinary deed is acknowledged. This release or waiver may well be in the body of the deed, and precede the signature of the grantors, for they must sign it. A mere statement by the officer, in his certificate, of the acknowledgment, that the householder released or waived the benefits of the act, will not be a compliance with the act, for it is not a writing subscribed by the householder, as the act imperiouly demands. The act nowhere requires that the officer taking the acknowledgment of the householder alone should certify that he released or waived the benefits of the act. The release or waiver being expressed in the body of the deed and signed by the grantor, the usual form of acknowledgment is sufficient as to him. But as it regards the wife, who joins in the execution, since the act of 1857, we would say, that a fair construction of the act, taken in connection with the conveyance act, would require that the officer taking the acknowledgment of the wife, should certify,

also, that he fully informed her of her rights under the act, and that she voluntarily released or waived all right and benefit under it.

The mortgage in this case to Isaiah Vanzant, was executed in the ordinary way, and contains no release or waiver of the homestead act by John A. Vanzant, the householder, and then in the actual occupancy of the premises, residing thereon with his family. The benefits of the act not having been released or waived, they remained to the family for their benefit, and to continue up to and after the death of the householder. Whilst he lives, the right exists so long as there remains a family to enjoy it. When he dies, the exemption continues after his death for the benefit of the widow and family, some or one of them continuing to occupy "such homestead," "until the youngest child shall become twenty-one years of age, and until the death of such widow."

The intention of the act is, manifestly, to save the homestead for the family, and there is the same necessity for a home when the householder is living as when he is dead, hence the right to this homestead, not having been released by Vanzant, enures to his family.

The question now arises, did the divorce of the wife destroy this right? The natural death of the householder would not destroy it, nor would his civil death for crime. If this was not so, the object of the act would be defeated, and the beneficence of the legislature of no avail. The wife was the meritorious cause of the divorce—the children composing the family were committed to her care and nurture, and have, in our judgment, an undoubted right to occupy the homestead. As a home, and as their home, it has never been granted away, or the right to occupy it released or waived by any one competent to release or waive it. The spirit and policy of the homestead act seem to demand this concession, and to regard the complainant, for this purpose, as a widow and the head of the family.

But there are other circumstances disclosed by the record, which fortify the claims of the complainant to the enjoyment of this property. In the first place, it is abundantly proved the property was purchased with her own means, and in the next place, that the court decreeing the divorce, assigned it to her as alimony, and for which she holds the deed of the master in chancery, executed under the decree of the court, and this, anterior to the proceedings to foreclose the mortgage given by John A. to Isaiah Vanzant, and prior to the confession of the judgments by John A. to the other defendants to the bill. But under the broad shield of the act of 1851, we think the complainant can be, and should be protected. The right to the

property as a homestead has never been surrendered, released or waived. Her plea is not for herself alone, but for her infant children.

But it is insisted, that the complainant did not reside on the premises with her family, after filing her bill for a divorce. That absence is explained, and may be justified by the case of *Walters, Adm'x,* v. *The People,* 21 Ill. R. 178. The tenant in possession attorned to her, and it was, therefore, under the circumstances, her occupancy.

As to the claims of the judgment creditors, which the court below did not dispose of, we have to say, that the injunction allowed complainant on applying for a divorce, should, by its very nature and force, prevent as well any incumbrances being placed upon the property by John A. Vanzant, as an alienation of it by him.

When the bill was filed in this case for divorce and alimony, the premises were the homestead of the family, and the rights of complainant, Martha A., must necessarily be determined, as they existed at that time. By filing her bill, she obtained a lien upon the premises, and they, thereby, became subject to whatever equities she might be able to establish. Then, who meddled with the property by buying the same, or by effecting incumbrances on it, would do so subject to her equities, and on the doctrine of *lis pendens,* would be affected by them. Neither the mortgagee of the premises, nor any other person, after the filing of her bill, by any proceedings, could cut out her equities; and by the decree and deed of the master, she became the exclusive owner of the property, and actual residence thereon became unnecessary. Neither could John A. Vanzant, by abandoning the premises, give efficacy to the mortgage, nor to any other incumbrance.

We think, therefore, the sale under the judgments in which the mortgage debt was included, was invalid. The decree of the Circuit Court is reversed, and the cause remanded, with directions to that court to enter a decree for the appellant, Martha A. Vanzant, for the premises, as her own property, relieved from the judgments and mortgage, and sale under them, she to hold the same discharged from all incumbrances.

*Decree reversed.*