## JULIUS ROSHOLT *vs.* THEA MEHUS.

Opinion filed January 8th, 1894.

**Homestead—Abandonment.**

> Where a married woman leaves the home of herself and husband, the title to which was in the husband, and remains away nearly three years before claiming any homestead interest in the property, but the husband remains in constant occupancy of the land, keeping his home thereon, such absence alone will not constitute abandonment by the wife of her homestead rights. Whether or not, in such a case, a wife could, under any circumstances, forfeit her homestead rights under our statute, not decided.

**Divorce—Effect on Homestead Rights.**

> In divorce proceedings, it is competent for the court to assign the homestead to the innocent party, either absolutely or for a limited period; but, where the decree in the divorce proceedings is silent upon the question, the homestead will, upon the dissolution of the marriage, remain in the possession of the party holding the legal title thereto, discharged from all homestead rights or claims of the other party.

Appeal from District Court, Steele County; *McConnell,* J.

Action by Julius Rosholt against Thea Mehus to determine adverse claims to land. There was judgment for defendant, dismissing the action, and plaintiff appeals.

Reversed.

*F. W. Ames* and *Carmody & Leslie,* for appellant.

*J. H. Bosard,* for respondent.

BARTHOLOMEW, C. J.  This action was brought to determine adverse claims to a quarter section of land in Steele County. It was heard on an agreed statement of facts, from which the court made two conclusions of law:  *First,* that plaintiff was not the owner in fee simple of the land; and, *second,* that defendant was entitled to the possession of the land. The judgment simply dismissed the complaint on the merits, with costs. Plaintiff appeals, and assails the conclusions as not warranted by the facts. On June 10, 1882, one Torkel Mehus, husband of the respondent, Thea Mehus, obtained a patent to said land under the federal

N. D. R.—33.

homestead law. Torkel Mehus and respondent continued to reside on said land as their homestead until May, 1887. At that time there were living three minor children, the issue of their marriage. In May, 1887, the respondent, Thea Mehus, taking her minor children with her, left the said Torkel Mehus, and has not lived with him since that time. Torkel Mehus continued in possession of the land, and made his home thereon until the sale thereof, hereinafter mentioned. In January, 1890, the respondent, as the wife of Torkel Mehus, and in behalf of herself and her minor children, attempted to file a declaration of homestead under § § 2458 and 2459, Comp. Laws, and the declaration was recorded in the office of the register or deeds of Steele County. In October, 1890, she brought an action of divorce against Torkel Mehus, on the ground of his adultery; and in January, 1891, the District Court granted her a decree absolute on that ground, and gave her the custody of the three children. In her complaint she prayed the allowance of a reasonable sum for maintenance of herself and children out of the property of her said husband. The decree gave her a gross sum of $250, and $20 per month for the support of herself and children. No order whatever was made relative to the homestead, nor was it mentioned in the complaint. On the 9th day of September, 1891, Torkel Mehus executed a warranty deed of said premises to the appellant, Rosholt. Appellant was a purchaser for value, with no notice of any claim of respondent upon the land, except the constructive notice given by the record of the homestead declaration and the record in the divorce proceedings. Apellant claims under the deed, and respondent claims a homestead interest in the land.

What was the condition of this land as to the homestead character at the time of the rendition of the divorce decree? We think it was the homestead of Torkel Mehus and his family, including this respondent. The legal head of the family had remained in constant occupancy of the land as his home. This preserved its homestead character. The actual presence of the wife is not required for the inception or preservation of the

homestead right, so long as the husband is the head of the family. *Johnson* v. *Turner*, 29 Ark. 280; *Williams* v. *Swetland*, 10 Iowa, 51; *Bradford* v. *Loan & Trust Co.*, 47 Kan. 587, 28 Pac. 702. Without holding that a wife can forfeit her homestead interest in her husband's home, or estop herself from claiming the same by any-thing short of a contract, but assuming such to be the law, it is yet certain that this record shows no such forfeiture or estoppel. The record does not disclose when the adultery upon which respondent based her action for divorce occurred. If prior to her leaving home, her absence would not imperil her rights, (*Earle* v. *Earle*, 9 Tex. 630;) but, if subsequent, yet it does not appear that she left her home and abandoned all intention to return. It does not appear that she left the jurisdiction, or attempted to establish a home elsewhere. Her effort to file a declaration of homestead would indicate an intention to return. It has grown to be familiar law that, in the absence of express statutory provisions, absence from the homestead for any reason-able time will not amount to abandonment when the *animus rever-tendi*, always exists, and no other home is created. We repeat, respondent's homestead right existed at the date of the rendition of the decree of divorce, but it so existed by virtue of the fact that she was a member of the family of Torkel Mehus, who with his family, had established his home and their home thereon, and whose occupancy had been continuous. Her rights were in no manner strengthened by the fact that she attempted to place a declaration of homestead on record. Such declaration does not create homestead rights (*Cole* v. *Gill*, 14 Iowa, 527; *Yost* v. *Devault*, 9 Iowa, 60;) nor do we think, although we do not find the point ruled, that it takes the place of continuous occcupancy after the inception of the homestead, except where, as in Minnesota, there is an express statutory provision to that effect. But even then, we suppose, the statute in no manner affects the question of actual abandonment, but might, in a subsequent contest, shift the burden of proof. In this state, when the head of a family owns land in excess of the amount allowed by law for a homestead, and

the land is in one body, and the family resides thereon, the homestead may be selected in any form that may be desired up to the quantity allowed by law as a homestead. Recording a declaration of homestead gives notice to all purchasers, and all parties dealing with or extending credit to the owner, of the exact land claimed as a homestead. This, we think, is the main, and perhaps exclusive, reason for the provision, because a failure to make and file the declaration does not render the homestead liable in execution. It only devolves upon the officer holding the execution the duty of selecting, platting, and recording the homestead. But since respondent's homestead rights vested exclusively upon the fact that she was a member of the family of Torkel Mehus, and since the divorce effectually severed that relation, it follows that her homestead right was destroyed, unless preserved by the statute or the decree. That decree severed the family relation theretofore existing between Torkel Mehus and Thea Mehus. She was no longer a member of his family. She was neither his wife nor his widow, and could claim none of the homestead rights given by law to the wife or widow. The occupancy which created and had preserved for her a homestead right in that land ceased instantly when she ceased to be a member of the family of Torkel Mehus.

But it is claimed that, by virtue of a new relation then created, the homestead right devolved upon her. It is urged that when respondent was devorced from her husband, and given the custody of the minor children, she became the head of the family, and that under such circumstances, when the wife is the meritorious cause of the divorce, she does not, by obtaining a divorce, forfeit her homestead right. The position thus broadly taken does not meet our approval. Whatever support it has in the books originated in *Vanzant* v. *Vanzant*, 23 Ill. 536. In that case the complainant was the divorced wife, who had been given the custody of the minor children. After asserting her right to the homestead as against the defendant, who was a creditor of the husband, the court say: "The spirit and policy of the homestead

act seem to demand this concession, and to regard the complainant, for this purpose, as a widow and the head of a family." The court immediately adds: "But there are other circumstances disclosed by the record which fortify the claims of the complainant to the enjoyment of this property. In the first place, it is abundantly proved that the property was purchased with her own means, and, in the next place, that the court decreeing the divorce assigned it to her as alimony, and for which she holds the deed of the master in chancery, executed under the decree of the court." It is proper to add, also, that the premises, at the time of the divorce, were in the possession of a tenant, who immediately attorned to the divorced wife, and the court held that to be equivalent to actual occupancy by her. This case was followed by *Bonnell* v. *Smith*, 53 Ill. 375, where, also, the wife obtained the divorce and custody of the children, and was decreed the homestead absolutely as alimony, and the court without discussing the matter, stated: "She therefore held it in a double right,—as alimony, under the decree of the court, and as her homestead, by operation of the statute." In this state a decree of divorce which granted to the meritorious wife the homestead absolutely as alimony would forever protect her possession, except in the enumerated cases, where a homstead is liable, irrespective of any construction of the homestead law. But in *Sellon* v. *Reed*, 5 Bliss. 125, also 21 Myer's Fed. Dec. 639, and which arose in Illinois, the decree in the divorce case made no such disposition of the homestead. The fee was in the husband, or we so gather from the case. In the divorce action the meritorious wife obtained custody of the child and alimony in gross. Nothing was said about the homestead, she was in possession, and remained in possession with the child, and she was held entitled to possession, as against her divorced husband's grantee. The case is ruled on the Vanzant case. These cases have been pressed upon us with much confidence, as being a construction by able courts of a homestead law not materially different from our own. The question is now raised for the first time in this jurisdiction. Its decision will

announce a rule of property to be followed hereafter. That rule should be supported by sound judicial reasons. We are forced to say, when it is sought to carry the rule indicted in *Vanzant* v. *Vanzant*, to the extent that is here claimed, that it fails to find support in sound reason, and is entirely unnecessary for the protection of the family. It is true that the homestead estate is created for the benefit of the family, and not for the benefit of the husband and father. *Fore* v. *Fore*, 2 N. D. 260, 50 N. W. 712. And it is true that courts liberally construe homestead laws, for the purpose of effectuating their wise and beneficent intentions, to the end that no family, through the misfortune of poverty or the death of its legal head, may be deprived of shelter, and where the homestead consists of a farm, as in this case, of support. But all the reasons which have induced the law to favor the wife or widow in the matter of homestead rights are entirely absent in cases of divorce. There is no action known to the law wherein the entire property of both parties is brought more directly within the grasp and control of the chancellor than the action for divorce. In this action the chancellor reviews not only the marital rights and wrongs of the respective parties, but their financial status and financial needs. He requires absolute information as to the number, age, and condition of all minor children. He knows it is the duty of the husband and father to support the family and educate the children. He knows that, in case of the death of the husband and father, the law places its hand upon so much of his property as constituted his homestead, and devotes it exclusively to the accomplishment of those purposes which it was the duty of the husband and father to accomplish while living. Where a divorce a viculo is granted to an innocent wife, and she is given the custody of minor children, it is the duty of the chancellor, so far as the circumstances will permit,—and his power in that respect is plenary,—to compensate the innocent family for every right it has lost by reason of the legal separation from an offending husband and father. Under our statute, the court may in such cases require the husband to give security for any payments

ordered to be made to the wife, or for the maintenance of the family or the court may place the entire estate of the husband in the hands of a receiver, in order to secure such payments or maintenance, and the homestead, as such, is specially placed in the control of the court. The statute says, (§ 2585 Comp. Laws:) "The court, in rendering a decree of divorce, may assign the homestead to the innocent party, either absolutely or for a limited period, according to the facts in the case and in consonance with the law relating to homestead." It would appear from this language that the legislature, so far from intending that the homestead should pass to the innocent party by virtue of the statute alone, thought it necessary to give the court express power to so dispose of it by decree. We are entirely unable to see any good reason why, after the chancellor, in the exercise of the broad and liberal discretion in him vested, has given the innocent family every protection the circumstances admitted or their needs required, the law should then step in, and transfer to them, at the expense of the husband, another and very material estate, to-wit: the homestead owned and theretofore occupied by him. Particularly must this be true when, as in this case, the decree of divorce casts upon the husband the continuing duty of supporting that family, by compelling him to pay a certain monthly payment. It is not to be believed that the law will then grasp the very property out of which the husband must realize the money to make those payments, and transfer it to the family, and yet hold him for the payments. We deem it better for the innocent party, better for the fee owner, better as a rule of property, that the interests of the respective parties in the homestead should be fixed by the decree in the divorce proceeding; and, when that decree is silent, the homestead, like all other realty, must remain in the possesion of the party holding the record title, discharged of all homestead rights and claims of the other party; and this we deem the result of the better authorities. *Heaton* v. *Sawyer*, (Vt.) 15 At. Rep. 166; *Wiggin* v. *Buzzell*, 58 N. H. 329; *Biffle* v. *Pullman*, (Mo. Sup.) 21 S. W. 450. The District

Court for Steele County will reverse its judgment, and enter a decree granting the relief prayed for in the complaint.

Reversed. All concur.

CORLISS, J., (concurring.) The respondent, in effect, claims that she had the right, after she had ceased to be the wife of the owner of the property used by them both as a homestead, to eject her former husband therefrom, notwithstanding the fact that he owned the fee. A homestead right is not property which can be sold. It possesses no value independent of the right to posses-ion. If the respondent has a homestead right in the property in question, she has a right to occupy the premises, and she has no other or differenf right. She can occupy them during the balance of her life. Her right of possession is inconsistent with the husband's right of occupancy. They are divorced. The family tie is broken. Unless they remarry, it is contrary to public policy that .they should live together as formerly under the same roof. The divorce was granted because the court decided that they ought not to inhabit the same home. The homestead right survives the divorce. *Doyle* v. *Coburn,* 6 Allen, 71; *Biffle* v. *Pullman,* (Mo. Sup.) 21 S. W. 450. In whom is it vested? It cannot belong to both parties. While the family was a unit, it belonged to the family; but, after the union of the family had been destroyed, the homestead right must then have vested exclusively in either the husband or the wife. How can it be claimed that the decree of divorce vested it exclusively in the former wife? That decree, so far from transferring the right from the husband to the wife, struck from under her the very foundation of her claim to a homestead right. This right was given to her as a wife, and after his death she might enjoy it as a widow. After the divorce, she was not his wife, and could never be his widow. The right was given to her because of the duty of the husband to provide her with a home. After the divorce the husband, as such, owed her no such duty. He thereafter owed her no duty whatever as husband. He has ceased to be her husband. Whatever a wife can claim from her former husband after divorce is not as his wife,

but under the terms of the decree of divorce itself. If this gives her the homestead, she can have it. If this gives her alimony, she can have it. But she can have no more. If the decree gives her neither the homestead nor alimony, she is entitled to nothing. Her former husband is no longer bound to furnish her a home. But the decree of divorce in this case did in fact require the husband to pay the respondent monthly alimony for her support. The word "support" embraces not only food, fuel, and rainment; it also includes shelter,—a home to live in. The husband is ordered by the court not to provide her a home, much less to surrender up to her his own home. He is directed to furnish her with a certain amount of funds, with which she is to procure a home for herself. Must the husband, in addition, yield up to her his own home? The mere granting of a divorce cannot work a destruction of the husband's rights, and vest them exclusively in the former wife. Nor is it material that the divorce was for the husband's guilt. There is no statute which in the remotest manner warrants the rule that the husband's guilt should of itself, when followed by a divorce, work the destruction of his homestead right in favor of his former wife. His guilt is a circumstance which will weigh heavily with the chancellor in regulating, by his decree, the future duty of the guilty husband to the women he has wronged. It will lead the chancellor to give the wife the amplest possible support out of the husband's estate and earnings. Frequently it will constrain the court to award to her the homestead, especially when, as in this case, the wife is given the custody of the children. Our statute expressly authorizes the court to do this: "The court in rendering a decree of divorce, may assign the homestead to the innocent party, either absolutely or for a limited period, according to the facts in the case, and in consonance with the law relating to homestead." Section 2585, Comp. Laws. This statute is conclusive against the theory of respondent that the mere fact of a granting of a divorce assigns the homestead right to the innocent party. The statute declares that this assignment must be embodied in the decree itself. The

best possible time to settle all such matters is when all the facts and circumstances are before the court granting the divorce,—the number, age, and sex of the children; the value of the estate of the husband; his capacity to earn money; the degree of his guilt; the position of the parties in society; and such facts as bear upon the questions who should have the custody of the children, and whether it will be better to allow the wife to live on the homestead, or be supported by the husband elsewhere. There is no danger that denying to the mere granting of a decree of divorce for the husband's guilt the effect to assign the homestead right to the wife will work her any injustice. She can and will be fully protected in and by the decree. There is nothing in the fact that the decree awarded to the respondent the custody of the children. When, in such a case, the decree is silent on the point, the father is bound to support the minor children in the wife's custody the same as before divorce. They are still his minor children. The divorce in this case recognized this duty. It required the husband to pay the wife alimony for the support, not only of herself, but of the children intrusted to her care. She was to be paid money by the father to provide a home for them, as well as for herself. So far as the children themselves are concerned, it is clear that their rights depend upon the will of their parents, or the one who is entitled to the homestead. The consent of a child is not necessary to the alienation or abandonment of the homestead. The father having conveyed the fee to another, and thereby destroyed his homestead right, the derivative right of the children was by this conveyance destroyed; the consent of the mother to the conveyance being no longer necessary, she having ceased to be the father's wife. The statute gives the wife or widow the homestead right in her husband's real estate used by them as a home. When there is neither a wife nor a widow to claim a joint right with a husband he is the sole owner of such homestead right when he is the owner of the property itself. This is true of the wife, also, as to property owned by her.

Her husband's homestead rights in such property cease when he ceases to be her husband, unless continued in him by the decree of some court of competent jurisdiction.

(57 N. W. Rep. 783.)