OLE TROMSDAHL v. Theodore Nass, Maria Nass, and Duncan Beaton, DUNCAN BEATON (alone, appellant).

(146 N. W. 719.)

**State homestead — claimant — head of family — residence upon — temporary absence — domicil — exemption of homestead — intent alone insufficient — must be accompanied by acts — mortgage of plaintiff valid.**

Action involves validity of a mortgage given by mortgagor, a married man, without his wife joining therein, and under the following facts: Mortgagor came here from Sweden in 1906, leaving his wife and six children there. In 1907 he made homestead entry on land in Williams county, upon which he established residence, and later offered final proof, on June 8, 1908, the date on which he executed the mortgage in question. Receiver's receipt was issued October 23d following, with delivery of patent thereon in June, 1909. This mortgage was recorded in October, 1908. Two years later, in November, 1910, another mortgage was given to appellant, Duncan Beaton, which was also recorded. If the first mortgage be invalid the Beaton mortgage is a first and only mortgage; otherwise it is subject to plaintiff's mortgage. Each mortgage is for nearly as much as the land is worth. The entryman, mortgagor, testifies that he took the homestead as a home for himself and family, with the intention of at some time, and as soon as he secured sufficient money to do so, to have his wife and family brought here from Sweden. He has always been dependent upon labor, and has sent more than $300 to his family in Sweden for their support, sending the same in small amounts at regular intervals. He is fifty-

Note.—The authorities on the question as to what constitutes a "family" under the homestead and exemption laws are collated in a note in 4 L.R.A.(N.S.) 365. See also notes in 61 Am. Dec. 586, and 70 Am. St. Rep. 107. And as to whether continuance of family is a condition of the continuance of homestead, where its existence is a condition of the inception of the homestead, see note in 16 L.R.A. (N.S.) 111.

four years old, his wife fifty-five. He has never taken out final citizenship papers, having made final proof based on his declaration of intention to become a citizen. The usual homesteader's shack constituted the bulk of his improvements on the land, which he left in June, 1908, returning to Bottineau county, 200 miles distant, where he resided for four years, to the date of trial, in 1912. If the land was a state homestead, that is, was impressed with the characteristics of a home as guaranteed exempt by § 208 of the state Constitution, and § 5049, Rev. Codes 1905, to "every head of a family residing in this state, . . . and consisting of a dwelling house in which the homestead claimant resides," the mortgage of plaintiff is void, otherwise it is valid. *Held:*

The tract never became a state homestead as defined in §§ 5049, 5050, as available to a claimant or to the head of a family as defined by § 5070, Rev. Codes 1905, for the want of a resident family residing upon the tract. To possess a homestead exemption there must be a resident family, and a family residence wherein the homestead claimant resides. Residence within this state and upon the tract is required of both the head of the family and the family. This is not a case of temporary absence of the family from the state or homestead, nor has the family ever constructively acquired a domicil or a residence in this country under these facts. The exemption to homestead claimants was designed to protect those who subject themselves to the laws of our state and act in reliance thereon, but not to treat as homes what are not homes in fact, nor give powers to nonresidents, which could not under any circumstances be of use to them personally. Where the future removal of the family of the homestead claimant into this state of his residence is wholly uncertain, and a period of six years elapses without their removal from the foreign country to this state, no homestead exemption will be accorded to the husband. Intent alone to bring the family, unaccompanied by their removal from the foreign country within a reasonable time, in insufficient to bring the claimant within either the letter or the spirit of the state homestead statute. The mortgage is held to be valid.

Opinion filed March 14, 1914. Rehearing denied April 13, 1914.

Appeal from the district court of Williams county, *Frank Fisk,* J. Affirmed.

*Henry G. Middaugh* and *Rollo T. Hunt,* for appellant.

The husband is the head of the family. He may choose any reasonable place or mode of living, and the wife must conform thereto. Rev. Codes 1905, § 4076.

A conveyance of the homestead must be executed by both husband and wife. Rev. Codes 1905, § 5052.

A mortgage on the homestead, executed by the husband alone, is not voidable, but wholly void. Gaar, S. & Co. v. Collin, 15 N. D. 622,

110 N. W. 81; Helgebye v. Dammen, 13 N. D. 167, 100 N. W. 245; Silander v. Gronna, 15 N. D. 552, 125 Am. St. Rep. 616, 108 N. W. 544; Rev. Codes 1905, § 6686.

The homestead is preserved and protected, not for the head of the family, but for the family. Bremseth v. Olson, 16 N. D. 242, 13 L.R.A.(N.S.) 170, 112 N. W. 1056, 14 Ann. Cas. 1155; Dieter v. Fraine, 20 N. D. 484, 128 N. W. 684.

No declaration of homestead is necessary. Rosholt v. Mehus, 3 N. D. 513, 23 L.R.A. 239, 57 N. W. 783; Kuhnert v. Conrad, 6 N. D. 215, 69 N. W. 185.

Temporary absence therefrom does not defeat the homestead. Smith v. Spafford, 16 N. D. 208, 112 N. W. 965; Edmonson v. White, 8 N. D. 74, 76 N. W. 986; Gaar, S. & Co. v. Collin, 15 N. D. 622, 110 N. W. 81; Gee v. Moore, 14 Cal. 472.

A conveyance of the homestead, not executed by the husband and wife, is void. Helgebye v. Dammen, 13 N. D. 167, 100 N. W. 245; Silander v. Gronna, 15 N. D. 552, 125 Am. St. Rep. 616, 108 N. W. 544; Justice v. Souder, 19 N. D. 613, 125 N. W. 1029.

*Bowen & Adams,* for respondent.

The mere intention to occupy certain premises as the homestead is insufficient, in the absence of some acts indicative of carrying such intention into immediate effect, to some extent at least. Rev. Codes 1905, § 5054; Styles v. Theo. P. Scotland & Co. 22 N. D. 469, 134 N. W. 708; Brokken v. Baumann, 10 N. D. 453, 88 N. W. 84; Justice v. Souder, 19 N. D. 613, 125 N. W. 1029.

Actual possession, when applied to land, is the actual and continuous occupancy or exercise or full dominion. M'Colman v. Wilkes, 3 Strobh. L. 465, 51 Am. Dec. 637; 31 Cyc. 926 (c), 927 (2) and cases cited; Binda v. Benbow, 9 Rich. L. 15.

Goss, J. Plaintiff brings this action to foreclosure a real-estate mortgage upon land in Williams county, owned by the original homesteader, Theodore Nass, who admittedly executed and delivered his promissory notes for $1,070 and interest, secured by real-estate mortgage, signed by himself alone, to this plaintiff, his brother. This mortgage was recorded two years before that of defendant and sole appellant, Duncan Beaton, who has defended for himself alone, and asked foreclosure of

his $800 mortgage, taken and recorded subsequent to plaintiff's mortgage, which first mortgage he desires to have declared invalid because Marie, wife of Theodore Nass, did not join in or sign the mortgage to plaintiff, as required by § 5052, Rev. Codes 1905, if the tract was impressed with the character of a state homestead under §§ 5049–5070, Rev. Codes 1905. Briefly summarized, the issue is not one of priority between mortgages, but, instead, whether the first mortgage, belonging to plaintiff, is valid, the mortgagor's wife not having joined therein.

There is no dispute in the material facts. Mortgagor, Theodore Nass, married his wife, Marie Nass, in Sweden in 1896, where they lived and where six children were born to them. In July, 1906, he came to the United States, leaving his family in Sweden. In April, 1907, he made homestead entry on this land. Within the six months' period allowed for establishing residence on government homesteads he established his residence on the tract, and maintained it for the requisite eight months, when he made final proof. At the time of final proof, before United States Commissioner Flittie, at Williston, on the 8th of June, 1908, he executed and delivered the mortgage and notes in question to his brother, this plaintiff. His proof was subsequently accepted, and a receiver's receipt thereon issued October 23, 1908, followed by patent dated June 17, 1909. Plaintiff's mortgage was recorded October 24, 1908. Two years thereafter, or on the 22d of November, 1910, the mortgage of $800 was executed to Duncan Beaton, and was recorded the 11th of January, 1911.

Nass has testified that he took the homestead as a home for himself and family, and with the intention at some time, as soon as he acquired the means to do so, to send to Sweden and have his wife and family brought over. He has been obliged to depend upon labor for his sustenance, and during the period from his arrival to the time of trial he has earned and sent upwards of $300 to his family in Sweden. This has been sent in small amounts, at regular intervals, and is proof on his part of his good faith toward his family. One child, a girl, has been brought to this country, and at the time of trial was residing at Rugby, neither the time of her arrival nor her age being shown. It does not appear that she ever resided with him upon the homestead, or that she was in this country at the time of the execution of the mortgage to plaintiff. From the care with which the case was tried we shall

assume that she was not then in this country or residing with mortgagor on this land; otherwise proof of the facts would have been made. His wife is fifty-five years old, and plaintiff fifty-four. The homesteader in an alien, never having taken out final citizenship papers, having tendered final proof on his declaration of intention to become a citizen, as the homestead law permits may be done on fourteen months' proof, where the land is purchased for the $200 fee per quarter section paid the government. The land is not worth the total of both mortgages, the proof showing the value thereof to be about $1,500. The usual homesteader's shack constituted the bulk of the improvements at the time of proof. Soon after proof was made, in June, 1908, Nass left his homestead and returned to Bottineau county, 200 miles distant, where he has at all times since resided, and where he was residing at the date of trial, on July 12, 1912. Practically all of the testimony offered by defendant Beaton was taken under objection, for which basis is laid in plaintiff's pleadings, to the effect that as no declaration of homestead in the real property mortgaged has ever been filed by anyone, and that more than two years has elapsed after the execution of the instrument sought to be foreclosed and the commencement of these proceedings, in time nearly four years, no defense based upon homestead rights can be asserted as against the mortgage. Plaintiff seeks to avail of §§ 5053, 5054, Rev. Codes 1905, and as against such claim the defendant claims to have been in actual possession of the land when mortgaged, and has not since quit possession thereof up to the time of the interposition of his defense in this action.

Any rights of Nass or defendant Beaton must be founded upon the assumption that the proof establishes that Nass is entitled to claim the homestead exemption, as a homestead is defined by § 5049, Rev. Codes 1905. For either of the defendants to avail of homestead rights the facts must bring Nass within this statutory exemption. The statute defines a homestead as follows: The homestead of every "head of a family residing in this state," of a prescribed area, "and consisting of a dwelling house in which the homestead claimant resides, and all of its appurtenances," shall be exempt from forced sale as provided by law. The question first arising under the proof is whether Nass, a married alien with a family whom he is supporting, at all times resident in Sweden, can claim a right of homestead, under § 5049, in land concern-

ing which, had his family been here and resident with him upon the land, he and his family, beyond question, would have possessed homestead rights. The homestead exemption is not given to every married man or woman or person having others dependent upon him for support. "The homestead exemption is intended solely for the benefit of the family, and none are authorized in law to participate in its advantages except those who come within the meaning of that term" family. Prater v. Prater, 87 Tenn. 78, 9 S. W. 361, 10 Am. St. Rep. 623–628, and note. It is not given to the resident in this state who possesses a family abroad, but, instead, to every "head of a family residing in this state," in "a dwelling house in which the homestead claimant resides;" or, as held in Calmer v. Calmer, 15 N. D. 120–125, 106 N. W. 684, it "means the real property in or upon which the home is located, and which is devoted to a use appropriate and usual to a home place." The portion of the statute requiring residence in this state has reference to the residence of the family as much as to the residence of the head of the family, in instances, as here, where the family is actually resident abroad, and cannot be considered as constructively resident at the husband's domicil. And the reason for this is apparent, and is conclusive against defendant's contention. The homestead privilege "can only be reserved to a family. Homesteads are most frequently secured to the head of a family. What constitutes the relationship will vary according to circumstances," governed by § 5070, Rev. Codes 1905, defining "head of a family." But to possess the exemption there must be a resident family, and a family residence wherein the "homestead claimant resides." Rev. Codes 1905, § 5049; Smith v. Spafford, 16 N. D. 208, 112 N. W. 965; 21 Cyc. 466 *et seq.* and cases cited. It is doubtful if there is any valid reason why a married man in plaintiff's situation, who may never bring his family to this country (not having done so for six years since his arrival, and he being here, as the proof discloses, because he can secure more wages than in Sweden, and who elects to remain an alien, not giving this country even citizenship in return for its gold) should enjoy a homestead privilege as the resident head of a resident North Dakota family, an exemption, privilege, or right denied to even the native and resident single men and women under ordinary circumstances. Certain it is that this court has denied the homestead exemption where more reason for granting it

existed than here. See Holcomb v. Holcomb, 18 N. D. 561, 120 N. W. 547, 21 Ann. Cas. 1145, where it was denied to a former wife who had secured a divorce and custody of children of the marriage, the husband contributing to the support of the family by alimony paid under award, the husband dying and the family being denied exemptions in his estate. Homestead provisions should be construed with reasonable liberality to effect their purposes (Dieter v. Fraine, 20 N. D. 484, 128 N. W. 684; Bremseth v. Olson, 16 N. D. 242, 13 L.R.A. (N.S.) 170, 112 N. W. 1056, 14 Ann. Cas. 1155), but it is a joke to contend that the framers of the homestead statutes ever contemplated that they should be invoked under such circumstances as these. This is not a case of abandonment of homestead rights (as Kuhnert v. Conrad, 6 N. D. 215, 69 N. W. 185, and Helgebye v. Dammen, 13 N. D. 167, 100 N. W. 245); nor a question of who is head of a family (Ness v. Jones, 10 N. D. 587, 88 Am. St. Rep. 755, 88 N. W. 706); nor mere absence of a wife from an established family homestead (as in Rosholt v. Mehus, 3 N. D. 513, 23 L.R.A. 239, 57 N. W. 783); nor want of a proper habitation jeopardizing the homestead right (Edmonson v. White, 8 N. D. 72, 76 N. W. 986); nor of in what member of the resident family upon the land title to the land was vested (as Bremseth v. Olson, supra), nor its being given for the benefit of the whole family and each member thereof (Dieter v. Fraine, 20 N. D. 484, 128 N. W. 684); nor of abandonment of a homestead by a husband with nonresident wife (as in Blatchley v. Dakota Land & Cattle Co. 26 N. D. 532, 145 N. W. 95); but is a case where no homestead exemption ever attached, nor, under the evidence as to acts as well as intent, could ever be claimed. No court has held the contrary that we have been able to find when the decisions are carefully read. For a case closely parallel in facts to this, supporting our holding, see Koons v. Rittenhause, 28 Kan. 359, under statutes analogous to §§ 5049 and 5052, Rev. Codes 1905; also Stanton v. Hitchcock, 64 Mich. 316, 8 Am. St. Rep. 821, 31 N. W. 395, that "it [the state's guarantee of the right of homestead] was designed to protect those who had subjected themselves to its laws, and acted in reliance on them, but not to treat as homes what are not homes, or give powers to nonresidents which could not under any circumstances be of any use to them personally." If the wife in Sweden were to come here, and attempt to claim her

homestead rights and that the deed is void because not joined in by her, the facts would be parallel to the Michigan case, where the wife was always a resident of New York, while the husband resided in Michigan. This case is followed in Black v. Singley, 91 Mich. 50, 51 N. W. 704, where, as here, there was testimony that the husband "when he got ready and the means was going to fetch his family" from Pennsylvania, but never did so. Held, no homestead rights were acquired by the wife. "If the future removal of his family into the state of his residence is wholly uncertain," no homestead privilege or exemption arises. 21 Cyc. 470, citing Dobson v. Shoup, 3 Kan. App. 468, 43 Pac. 817. See also Edgerton v. Connelly, 3 Kan. App. 618, 44 Pac. 22; Christy v. Dyer, 14 Iowa, 438, 81 Am. Dec. 493; Meyer v. Claus, 15 Tex. 516; Allen v. Manasse, 4 Ala. 554. The homestead exemption in this state is primarily for the protection of the family residing in this state and upon the homestead tract, the presumption being that if the family is residing elsewhere the state of its actual residence will look after its own, and the same should be equally true as to aliens in a foreign country. The homestead exemption in law should not be held to have ever existed, under the facts, in favor of defendant Nass or his family, at all times actually domiciled in and resident of a foreign country. To the foreign-born residents our state owes as much as they in return owe the state. But the state homestead statute should be interpreted as it is written and in the light of its intended benefits, as a protection to the resident head of a family actually or constructively resident within this state and upon the homestead tract. Nass comes neither within its letter nor spirit, for want of a family ever in America during his six years' residence here as a denizen. Nass might perhaps have possessed at one time a homestead claimant's right of homestead exemption, in spite of the absence of his family, if within a reasonable time after his arrival his efforts to found a family home had been diligent, actual, plainly manifest, in good faith, and accompanied with reasonable means to transport them here without undue delay. But any possible claim to such homestead rights had been lost long before he executed the mortgage in suit. His four years of subsequent inaction in such respect condemn any claim he might have otherwise urged, based alone on declared intentions to move his family here. Actions here "speak louder than words," and negative any actual intent to remove his family

to this country. Instead, the presumption is stronger that Nass will return to his family than that his family will follow him here. The wife's domicil cannot be held, under the circumstances, to follow the husband or be that of the husband. Hascall v. Hafford, 107 Tenn. 355, 65 S. W. 423, 89 Am. St. Rep. 952, and note citing much authority. However, cases are in conflict as to homestead rights of a nonresident widow in a decedent's estate. (Christie's Succession, 20 La. Ann. 383, 96 Am. Dec. 411, and note collecting authority), though by weight of authority usually denied (Note in 21 L.R.A. 241).

This finding disposes of any claims of appellant Beaton which must necessarily be based upon homestead rights existing to Nass. The judgment appealed from is therefore affirmed.

FISK, J., did not participate in this decision.