In re Richard Loren BUTTS, Debtors.

Nancy BUTTS, Plaintiff,

v.

Richard Loren BUTTS, Defendant.

Bankruptcy No. 84–05177.
Adv. No. 84–7103.

United States Bankruptcy Court,
D. North Dakota.

Jan. 25, 1985.

Frank Racek, Fargo, N.D., for plaintiff.

Thomas Aljets, Carrington, N.D., for defendant.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This case presents the issue of whether a spouse's interest in an award of marital property can be preserved under the theory of constructive trust.

The Plaintiff, Nancy Butts (NANCY), and Defendant/Debtor, Richard Loren Butts (RICHARD), were divorced by decree entered in state court on July 11, 1983. Richard filed a petition under Chapter 7 of the Bankruptcy Code on March 30, 1984. Nancy commenced the present adversary action on July 24, 1984, alleging in three counts that Richard's obligation under the decree to pay her $35,000.00 was: non-dischargeable as support; constituted a secured debt on the parties' residence; and set up a constructive trust for which Richard was the trustee and Nancy the beneficiary. At trial, the Court, with concurrence of both parties, dismissed Counts 1 and 2 leaving at issue only the claim of constructive trust. Richard generally denies the remaining allegation stating that the obligation to pay $35,000.00 is a debt dischargeable under section 523 of the Bankruptcy Code. Trial was held on January 3, 1985. From the evidence presented as well as the parties' Stipulation of Facts, the Court finds the relevant facts to be as follows:

## FINDINGS OF FACT

Richard and Nancy were married in 1972. Both are college educated. During their marriage, they acquired various properties including a house in Carrington, North Dakota, described as the West 25 feet of Lot 8 and all of Lot 9, Block 7, Clair's Addition to the City of Carrington, Foster County, North Dakota. They also acquired an interest in several businesses known as Prairie Inn, Inc. and Aneta Meats, Inc. The home was at all times owned in joint tenancy and constituted the family home until in 1980 when marital difficulties caused Nancy to move away from the house. During their marriage, Nancy used her salary to pay the mortgage on the Carrington home as well as providing funds for its maintenance.

The parties executed a property settlement agreement on June 16, 1983, which specified that they were "desirous of amicably settling their differences and desire to reach agreement on matters pertaining to property division and all other issues...." The terms of this agreement were incorporated into the state court's judgment entered on July 11, 1983. As material to the issue herein, the judgment provided as follows:

"2(b) The plaintiff [Richard] shall have and receive as and for his own separate property the following items:

The lot or lots and the residence thereon located in the city of Carrington, Foster County, North Dakota, to which property the defendant [Nancy] shall quit claim all her right, title and interest thereto within thirty (30) days from the date of the entry of the judgment to be entered herein.

. . . .

(d) That the plaintiff shall pay to the defendant as and for her equity in the residence in Carrington and as and for any share or interest in the Prairie Inn, Inc., Aneta Meats, Inc., or other asset(s) as may have been owned by the parties and in lieu of any and all other obligation (if any) as may be due to defendant, the sum of Thirty-five Thousand and no/100 Dollars ($35,000.00), payable in five (5) equal annual installment payments of Seven Thousand and no/100 Dollars ($7,000.00) each, the first of which shall be paid on or before July 1, 1984, and a like sum of $7000.00 on or before each July 1 thereafter, the final payment being due on or before July 1, 1988. Plaintiff shall be under no obligation to pay

any interest to defendant on the above mentioned principal sum. In the event the Carrington residence is sold in the calendar year 1983, then and in that event plaintiff shall pay to defendant the entire sum of $35,000.00 referred to above; which sum shall be payable to defendant at the closing of the sale of said residence.

(e) The defendant shall transfer to plaintiff any and all shares of stock owned by her in Prairie Inn, Inc., Aneta Meats, Inc., Butts Farming Association and Butts Feed Lots, Inc.; which assignment and transfer shall take place within thirty (30) days from the date of the judgment to be entered herein.

Pursuant to the terms of the stipulation and decree, Nancy quit claimed her interest in the Carrington house to Richard on March 6, 1984. Twenty-three days later, on March 30, 1984, Richard filed his bankruptcy petition.

At trial, Richard acknowledged that the $35,000.00 referred to in the divorce decree represented Nancy's interest in the Carrington home and the two businesses. He further stated that at the time of the settlement agreement, he had every intention of abiding by it. Nancy also believed the $35,000.00 was representative of her interest in the property. During the divorce negotiations, Richard was represented by the parties' family attorney, Robert Heinley, who drew up the property settlement agreement. Nancy was not represented by counsel, trusting that her interest would be fairly dealt with by Richard. Richard had considered personal bankruptcy at the time of the divorce negotiations and at that time contemplated declaring the house as exempt property in his own bankruptcy.

After the divorce and just shortly before filing bankruptcy, Richard sold all interests in Aneta Meats, Inc. and a portion of the stock in Prairie Inn, Inc., using the proceedings to pay off the remaining $18,000.00 mortgage on the Carrington house. At the present time, the Carrington house has no mortgage against it, and according to Richard, it is worth $72,000.00. He continues to reside in the home. He has listed the house as exempt in his bankruptcy schedules and has listed Nancy as an unsecured creditor in the sum of $35,000.00. It is his intention to sell the house and retain all proceeds for himself. Nancy has received no portion of the $35,000.00, and it is apparently Richard's intention that she receive none.

## CONCLUSIONS OF LAW

### 1.

The Plaintiff's case is premised solely on the argument that the facts of this case establish a constructive trust under state law which has the effect of negating Richard's claim of interest in the home to the extent that $35,000.00 represents Nancy's property interest. Richard, relying on strict application of section 523, charges that unless the $35,000.00 settlement obligation can be construed as an award of alimony, it must be regarded as a property settlement and as such would be subject to discharge by operation of section 523(a)(5). Secondly, he maintains that the facts of this case are not sufficient to constitute a constructive trust and that even if such were created, it is insufficient to establish an exception to discharge under section 523(a)(4). Because Nancy makes no claim that the obligation is exempt by virtue of section 523(a)(5), the Court will not construe this section except insofar as necessary to resolve the constructive trust issue. The issue before the Court is whether a constructive trust arose under the facts of this case and, if so, whether under bankruptcy law it may be given any effect.

### 2.

Resolution of the issue begins with consideration of section 523(a)(4) and its relationship to the theory of constructive trusts. Section 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity..." Three elements are necessary: a debt, a fraud or defalcation, and a fiduciary relationship. In the context of section 523(a)(4), courts have narrowly defined the

term "fiduciary capacity" as meaning only express or technical trusts. The Supreme Court in the early case of *David v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934), in construing section 17(a)(4) of the former Bankruptcy Act which is similar to the present section 523(a)(4), held that only debts arising from express or technical trusts are excepted from discharge. Most courts adhere to this general rule, including our own. *See In re Wightman*, 36 B.R. 246 (Bankr.N. D.1984) where it was noted that:

> "Implied or constructive trusts and trusts ex maleficio, that is trusts imposed because of wrongdoing on the part of a person to be charged as a trustee, are not susceptible to the establishment of a fiduciary relationship under the Code." 36 B.R. at 251.

In the *Wightman* case and others following the *Davis* decision, the inquiry centered on whether there was a true fiduciary relationship and whether the debts sprang from a fraud or defalcation while such relationship existed. Rarely has the question been whether the debtor had an interest in the property allegedly held in trust, or what the nature of that interest was as against the claimant, or how that inquiry might affect the applicability of section 523. This Court continues to accept the narrow definition of "fiduciary capacity" when applied in the context of section 523(a)(4). However, that definition and the applicability of the section 523 exceptions themselves should be considered with section 541 in mind. Section 541 describes the nature of the property interests which pass into the bankruptcy estate. Although broad in its terms, this section provides that property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest becomes property of the estate only to the extent of the debtor's legal title but "not to the extent of any equitable interest in such property that the debtor does not hold." *See* Section 541(d); *In re Losieniecki*, 17 B.R. 136 (Bankr.W.D.Pa.1981); *In re Giles*, 9 B.R. 135 (Bankr.E.D.Tex.1981). While section 541 was not referred to by Nancy,

the thrust of her argument is based on this concept. She claims her interest in the Carrington house as beneficiary of a constructive trust never passed into or became a part of Richard's estate and is thereby not subject to section 523.

Where constructive trusts have been found to exist, courts have held the result to be analogous to an express trust in that a bifurcation of title occurs. Legal title remains with the party in possession of the property while equitable title vests with the person claiming as beneficiary. *United States v. Fontana*, 528 F.Supp. 137 (S.D.N.Y.1981); *In re Shepard*, 29 B.R. 928 (Bankr.M.D.Fla.1983); *In re Vermont Real Estate Inv. Trust*, 25 B.R. 813 (Bankr.Vt.1982). When a debtor holds only bare legal title as a consequence of imposition of a constructive trust, then it is only that bare title which becomes property of the estate under section 541. *See In re Watt*, 6 B.R. 947 (E.D.N.Y.1980). Legal title alone has been held to be of no value to the estate and the debtor will be required to reconvey the property or its substitute to the beneficial owner. *In re Kennedy & Cohen, Inc.*, 612 F.2d 963 (5th Cir.1980); *In re Shepard*, supra.

Section 523 speaks in terms of a debt arising from fraud or defalcation while in a fiduciary capacity. It is concerned with a debtor-creditor relationship and does not expressly address the question of conflicting interests in property. A constructive trust, however, does not depend on the existence of a fiduciary relationship nor does it spring from a debtor-creditor relationship. This distinction, although not expressly addressed by any bankruptcy court in the context of divorce awards, has been alluded to and may be illustrated by comparing several recent bankruptcy court decisions. In the case of *Matter of Tressler*, 41 B.R. 779 (Bankr.Del.1984), a divorce decree provided for the debtor to assume a mutual debt. When the debtor failed to pay the debt, the mutual creditor obtained judgment against the non-debtor spouse who in turn obtained a wage attachment against the debtor. The non-debtor spouse

argued that the wage attachment claim was a result of defalcation while acting in a fiduciary capacity and thus non-dischargeable under section 523(a)(4). The court found no constructive trust to exist and even if it had, said the court, it would be legally insufficient since section 523(a)(4) does not apply to trusts ex maleficio that may be imposed by an act of wrongdoing. In *Tressler*, the bankruptcy court was not dealing with the question of legal versus equitable title in marital property. It was merely considering a marital debt which the debtor spouse had, by decree, been obligated to pay. Consider in contrast the case of *In re Brown*, 21 B.R. 377 (Bankr.E.D.Cal.1982), where the divorce decree provided that the debtor's navy pension was community property under state law and that the non-debtor spouse had a one-half interest in it. The debtor was by decree directed to pay the non-debtor spouse a portion of each monthly pension payment. The bankruptcy court, disagreeing with the debtor, held that the obligation was not one of property settlement under section 523(a)(5) but was a division of community-held property into separate property. The debtor held legal title to each monthly check, but the non-debtor spouse held an equitable interest in the portion awarded to her. The court held the debtor to be constructive trustee for the non-debtor spouse of her equitable interest. The distinction between these two cases is that the obligation in *Tressler* was merely a debt not arising from any pre-petition equitable interest in particular property. In *Brown*, however, the non-debtor spouse was said to have a specific interest in specific property which never became a part of the bankruptcy estate and thus the interest was not susceptible of discharge under section 523.

 There are very few cases which bear on this distinction, but the distinction does exist and is perhaps best characterized as an emerging departure from strictly categorizing divorce decree awards as either support or property settlements under section 523(a)(5). The Eighth Circuit Court of Appeals recently considered the issue in context of a section 522(f)(1) lien avoidance action. *See Boyd v. Robinson*, 741 F.2d 1112 (8th Cir.1984). The issue in the *Boyd* case stemmed from a divorce decree which awarded the parties' home to the debtor subject to a lien in favor of the non-debtor spouse for one-half of the equity. The amount of this lien was fixed by the divorce court at $7,000.00. The debtor, in filing for bankruptcy under Chapter 7, declared the entire home exempt. She then sought to have the non-debtor spouse's lien declared void pursuant to section 522(f)(1). The appellate court noted that in order to avoid a lien under section 522(f)(1), the lien must have attached to an interest of the debtor in exempt property. The court held that the non-debtor husband had an undivided one-half interest in the equity of the home which existed prior to the divorce and that the lien did not attach to any interest of the debtor in the home but merely recognized a remedy to enforce a pre-existing property right in the home. Our own court has previously followed the *Boyd* decision in the case of *Seablom v. Seablom*, 45 B.R. 445 (1984), wherein the debtor was awarded certain jointly owned real property, and the non-debtor spouse upon payment of $25,000.00 was to convey her interest in such property to the debtor. The non-debtor spouse was not expressly awarded a lien by the divorce court but this Court, in construing the totality of the circumstances, interpreted the decree as conditioning conveyance upon payment of the $25,000.00 in recognition of her pre-existing property interest—an interest she held as joint tenant. The law that has thus emerged is that if a spouse has a clearly defined and pre-existing interest in property created prior to the divorce decree, that interest does not become part of the debtor's estate upon filing of a bankruptcy petition and such interest is not defeated by section 523. This interest may spring from and be preserved by the existence of a constructive trust.

### 3.

 Although section 541 sets forth what property is to be included in the es-

tate, it is to state law that a bankruptcy court must turn when determining whether and to what extent the property belonged to the debtor.

> "Bankruptcy courts must still look to state law when determining the existence and nature of a debtor's interest in property; that is, whether a debtor has any legal or equitable interest in an item. But once that determination is made, whether the property will come into the estate is a federal question." *In re Hurricane Elkhorn Coal Corp. II*, 19 B.R. 609 (Bankr.Ky.1982).

Nancy and Richard owned the Carrington house in joint tenancy up until the time of her conveyance to him by quit claim deed. Under North Dakota law, a joint tenancy interest is one owned by several persons in equal shares. *See* N.D.C.C. § 47–02–06. Thus, Nancy during the marriage had an undivided one-half interest in the property. Further, pursuant to N.D.C.C. § 47–18–05, the homestead of a married person cannot be conveyed or encumbered unless the instrument bears the signatures of both husband·and wife. By reason of her marriage, Nancy acquired an interest in the Carrington home by which she could prevent an encumbrance or conveyance by Richard. In addition, if Richard died during the marriage, Nancy as surviving spouse would have been entitled to a life estate in the property under N.D.C.C. § 30–16–02 merely by virtue of it constituting her homestead. According to the testimony, Nancy used her income to maintain the house and to pay the monthly mortgage payments. Richard conceded at trial that the $35,000.00 represented her interest in the property. The settlement agreement incorporated into the divorce decree further indicates this fact. The $35,000.00 is stated as representing Nancy's *equitable interest.* All of the foregoing are indicia of the fact that Nancy had an undivided interest in the marital home—an interest that according to *Boyd* must be regarded as separate from any interest of Richard. A close reading of the divorce decree itself suggests that the $35,000.00 is reflective principally, if not entirely, of Nancy's interest in the Carrington house. The sum was "for her equity in the residence". If the house were sold in 1983, the decree provides that the entire $35,000.00 was to be paid to her from the sale proceeds. No specific mention is made of any portion being attributable to the other businesses. The Court concludes that the entire $35,000.00 actually reflects Nancy's equity in the Carrington home with her interest in Prairie Inn, Inc. and Aneta Meats, Inc. being of negligible value.

4.

■ At noted above, Nancy's interest in the home was an undivided pre-existing interest which, under North Dakota law, she could preserve even in the face of a divorce. Divorce by itself does not operate to divest individuals of undivided interests they hold in real property, and this was not to be the result of Nancy and Richard's decree. The decree entered on July 11, 1983, specified that Nancy was to quit claim her interest in the house within thirty (30) days of the decree and that he was to make his first payment to her of her equity on July 1, 1984. Both, the parties in their stipulation and the state court in its decree, recognized Nancy's separate property interest and provided that in exchange for a quit claim of that interest to Richard, he would pay her $35,000.00. She conveyed her interest in the home with the expectation of receiving in exchange, therefore, $35,000.00. But Richard duped her by filing bankruptcy shortly after receiving the quit claim deed. He now claims the entire house as exempt and, once sold, intends on retaining the proceeds of approximately $72,000.00 for himself. Can this be the result intended by operation of section 523 of the Code? This Court thinks not. The Bankruptcy Code cannot be construed to effectively divest someone of property which is rightfully theirs. By operation of section 541, a debtor can only bring into the estate that property which he holds both the legal and equitable title.

■ Under North Dakota law, a constructive trust is said to be "a trust im-

posed by a court in equity to compel a person who unfairly holds a property interest to convey such interest to the rightful owner." *Scheid v. Scheid*, 239 N.W.2d 833 (N.D.1976). The imposition of a constructive trust has long been recognized as a remedy in order to prevent unjust enrichment where title to property is acquired by fraud, duress, undue influence or is acquired in violation of a confidential or fiduciary relationship. *McDonald v. Miller*, 73 N.D. 474, 16 N.W.2d 270, 271 (1944). In order to establish a constructive trust in favor of Nancy, the following elements must be proved by clear and convincing evidence: First, that a confidential or fiduciary relationship existed between them and, secondly, that Richard retained or obtained an interest in the home in breach of that relationship. *See Weigel v. Rippley*, 283 N.W.2d 123 (N.D.1979); *In re Scheid*, supra. The term "confidential relationship" as construed by the North Dakota courts has been given a liberal interpretation in favor of the person confiding and against the confident for the purpose of establishing a constructive trust on a breach thereof. *Wildfang-Miller Motors, Inc. v. Miller*, 186 N.W.2d 581 (N.D.1971) quoting from 54 Am.Jur. Trusts § 283. Thus, under North Dakota law, the facts and circumstances must by clear and convincing evidence warrant imposition of a constructive trust. The facts of this case warrant such imposition. Nancy had a preexisting undivided one-half interest in the Carrington home. She and Richard agreed that this interest was worth $35,000.00 and that she would convey her interest to him and in exchange therefore he would pay her $35,000.00. At the instant Richard received a quit claim deed from her on March 6, 1984, he became invested with the obligation to pay her $35,000.00—an obligation which he acknowledged and which Nancy believed he would faithfully perform. The parties were in a position of confidence when they entered into their settlement agreement, and it was faith in that confidential relationship that caused Nancy to transfer her interest. Nancy retained equitable title until she received the $35,000.00

payment. Under such circumstances, this Court believes that North Dakota courts would impose a constructive trust. To hold otherwise would operate to divest Nancy of her one-half interest in the Carrington home without any consideration, permitting Richard to be unjustly enriched thereby. Richard's conduct with regards to Nancy is reprehensible. During divorce negotiations, he was already considering personal bankruptcy and contemplated declaring the entire house as exempt—an impossibility unless somehow he acquired full legal and equitable title. Nothing in the facts of this case indicates he ever advised Nancy of his intentions or that he would be filing his petition close on the heels of receiving her quit claim deed. This Court believes that had Nancy been aware of his intentions or the possible effect of the Bankruptcy Code, she never would have entered into the stipulation nor transferred her interest in the home. This Court concludes that a confidential relationship existed and that Richard betrayed that relationship by attempting to avoid his reciprocal obligation under the decree through filing bankruptcy. As a consequence, when Richard filed his petition on March 30, 1984, a bifurcation of title in the Carrington home had already occurred with Richard holding legal title but Nancy yet retaining an equitable interest. Nancy's interest never became part of Richard's estate. That interest has been valued at $35,000.00, and it is this sum which Richard as constructive trustee holds in trust for Nancy.

For the reasons stated herein, the Court holds that Nancy's equitable interest in the Carrington home or in the proceeds of said home valued at $35,000.00 did not pass into the bankruptcy estate and is not dischargeable under section 523 of the Bankruptcy Code. Further, the stay as against the Carrington home at 245 North Second Street, Carrington, North Dakota, described as the West 25 feet of Lot 8 and all of Lot 9, Block 7, Clair's Addition to the City of Carrington, Foster County, North Dakota, is lifted in order that Nancy might

proceed in state court with whatever state court remedies might be available to her.

JUDGMENT MAY BE ENTERED AC-CORDINGLY.