In re Darwin FANDRICH d/b/a Farm Services, Co., Debtor.

Darwin FANDRICH, Plaintiff,

v.

D & S HYDRAULICS CO., Mike D. Moser, Brian Janke; Midwest Industrial Equipment Company; Security State Bank; Sokota Hybrid Producers; and Farmers Union Oil Company of Wishek, Defendants.

Bankruptcy No. 85–05345.
Adv. No. 85–7110.

United States Bankruptcy Court,
D. North Dakota.

June 12, 1986.

LaRoy Baird, Bismarck, N.D., for plaintiff.

F.C. Rohrich, Linton, N.D., for Farmers Union.

David L. Johnson, Fargo, N.D., for Bank.

## MEMORANDUM OPINION

WILLIAM A. HILL, Bankruptcy Judge.

This matter is before the court on a complaint filed by the debtor, Darwin Fandrich, for an order allowing him to transfer certain real property to his former wife, free and clear of liens. The relief requested is opposed by several judgment lien creditors whose liens have attached to the property in question. The case was tried on April 23, 1986.

## FINDINGS OF FACT

The facts as material are the following:

The debtor was formerly married to Pamela Fandrich from whom he was divorced by Judgment and Decree entered May 23, 1985. The Judgment and Decree, entered on the basis of a stipulated settlement agreement provided:

"That the plaintiff [Pamela] shall be awarded the parties real property, specif-

ically, their home located in Wishek, North Dakota."

Pamela was also awarded the custody of the three minor children and the decree further provided that each party would execute all documents and deeds necessary to carry-out its terms.

Pursuant to the decree, the debtor quit claimed his interest in the home to Pamela by deed dated July 18, 1985. At the time of the divorce and up until August, 1985, the debtor continued to reside in the family home. •

In addition to a mortgage in favor of FmHA, there is a judgment lien against the property in the sum of $14,000.00 in favor of the Farmers Union Oil Company and a judgment lien in the sum of $34,104.00 in favor of the Security State Bank of Wishek, both of whom are defendants in the instant proceeding.

The debtor filed for relief under Chapter 11 of the Bankruptcy Code on June 14, 1985. The family home is not listed in the accompanying schedules as an asset of the estate nor does the debtor claim an exemption in said property under state law. The house at present is not being lived in by either the debtor or Pamela and Pamela has not filed a certificate of homestead under North Dakota law. It is her present intention to sell the property to a third party.

The debtor himself did not testify at trial.

### CONCLUSIONS OF LAW

The debtor, pursuant to section 363(f)(1) of the Bankruptcy Code seeks an order allowing conveyance of the property, formerly constituting the family home, to Pamela free and clear of the liens of Farmers Union Oil Company and Security State Bank of Wishek. This conveyance, evidenced by the July 18, 1985 quit claim deed is intended to effectuate the terms of the divorce decree. It is the debtor's position that his continued occupancy of the property subsequent to the divorce and at the time of filing of his bankruptcy petition is sufficient to establish the property as his homestead under North Dakota law against which no judgment lien may be enforced. The judgment lien holders argue on the other hand that the divorce decree operated to divest him of whatever rights he had in the property and that at the time of the bankruptcy filing the home did not constitute property of the estate subject to treatment under section 363(f).

The issue in the first instance is whether, at the time of filing the bankruptcy petition, the debtor had an interest in the family home which became a part of the debtor estate under section 541. If so, the next question is whether under North Dakota law the debtor could, despite the divorce decree, claim a homestead interest in such property and thereby invoke the avoidance provisions of section 363(f)(1).

### 1.

■ Section 541 of the Bankruptcy Code provides that commencement of a bankruptcy case creates an estate consisting of all legal or equitable interests which the debtor held in property as of the commencement of the bankruptcy case. 11 U.S.C. § 541(a)(1). This is a broad provision which encompasses all apparent interests of the debtor. *In re Graham,* 726 F.2d 1268, 1271 (8th Cir.1984). In order to determine the existence and nature of the debtor's legal or equitable interests in the property, bankruptcy courts refer to state law. *In re Davidson,* 738 F.2d 931 (8th Cir.1984); *Matter of Jones,* 768 F.2d 923 (7th Cir.1985); *In re Wolsky,* 53 B.R. 751 (Bankr.N.D.1985). A caveat to the pervasive effect of section 541(a)(1) is section 541(d) which provides that property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest becomes property of the estate only to the extent of the debtor's legal title but "not to the extent of any equitable interest in such property that the debtor does not hold." *In re Butts,* 46 B.R. 292 (Bankr.N.D.1985); *In re Losieniecki,* 17 B.R. 136 (Bankr.W.D.Pa.1981). It is generally recognized that naked legal

title held in trust for another, whether express or implied, is not a sufficient interest in land as will support a claim of homestead. 40 Am.Jur.2d, *Homestead*, § 55. As with legal and equitable interests generally, it is again to state law we should refer in·determining the character of a homestead and the extent to which a homestead exemption is vested in a particular individual. *In re Evans*, 51 B.R. 47 (Bankr.Vt. 1985).

The Security State Bank of Wishek argues that subsequent to the divorce decree, the debtor had neither a legal nor equitable interest in the home. While the debtor and Pamela were married, the house presumably was held in joint tenancy which gave each of them an undivided interest in the house. Divorce itself does not operate to divest individuals of undivided interests they hold in real property. The May 19, 1985 decree did not in and of itself operate as a deed of conveyance but rather required the debtor to execute such deeds as might be necessary to carry out the decree award. Up until the actual conveyance by quit claim deed in July, 1985, the debtor remained vested with at least legal title. This court has previously held that a property settlement decree results in a bifurcation of title with legal title remaining with the person in possession and equitable title immediately vesting in the beneficiary. *In re Butts, supra; Seablom v. Seablom*, 45 B.R. 445 (Bankr.N.D.1984). This bifurcation occurs in situations where the debtor as a party to a divorce proceeding is required by the decree to convey property or its substitute to the other spouse but as of the date of bankruptcy had not done so. This court and others have in such situations declared the debtor to be the constructive trustee for the non-debtor spouse's equitable interest. In the instant case, had the debtor not quit claimed the house to Pamela, he could have been compelled to make the conveyance. In the *Butts* case, this court concluded that property in which a debtor holds only legal title in which he could be required to convey to the beneficial owner is of no value to the estate.

■ Although the divorce decree did not operate as a present conveyance of the real property itself it did operate to bifurcate the title. The debtor retained legal title and it is only that interest which became property of the estate under section 541.

## 2.

■ The larger question, however, is whether the debtor, cloaked only with legal title was possessed of sufficient interest in the real property comprising the· parties' home to claim a homestead exemption in it and thus avoid the judgment liens.

"Homestead" as a term is capable of several meanings, it may be used in reference to the real property itself as well as to the right to have that property exempted from forced sale. 40 Am.Jur.2d, *Homestead*, § 1-5. In North Dakota the concept originates with article XI, section 22 of the North Dakota Constitution. This section mandates that a debtor's right to enjoy the comforts and necessaries of life should be recognized by laws exempting a homestead from forced sale. Chapter 28–22 of the North Dakota Century Code accords to a head of family certain absolute exemptions from attachment, levy and sale, among them being "the homestead as created, defined, and limited by law." N.D.C.C. § 28–22–02(7). A head of family not only includes a husband and wife, but also every person who has certain enumerated dependents residing with him or who provide support for unmarried children. N.D.C.C. § 28–22–01.1. The exact extent of the real property which may be taken as a homestead exemption is set forth in section 47–18–01 of the North Dakota Century Code. This section has been construed as a limitation and definition of the value of the exemption rather than a definition of the term, "homestead". *Cullen v. Sullivan*, 51 N.D. 384, 199 N.W. 760 (1924). Most bankruptcy courts faced with the concept of homestead have concluded, based upon the state law of the particular jurisdiction, that the concept of homestead is not an encumbrance or interest in land but is only

a right of exemption from execution. *E.g.,* *In re Wenner,* 39 B.R. 288 (Bankr.W.D. Wash.1984). This seems likely the extent of the term's meaning in North Dakota as well. The whole impetus for the existence of homestead is to preserve a home for a family. The North Dakota constitution and statutes are replete with references to family and the implicit necessity of providing for dependent children and relatives. The earliest North Dakota case to deal with the purpose of the homestead laws is *Rosholt v. Mehus,* 3 N.D. 513, 57 N.W. 783 (1894) where the court intimated that the reason for a homestead is for preservation of the family. The North Dakota Supreme Court unmistakably reached this conclusion in *Bremseth v. Olson,* 16 N.D. 242, 112 N.W. 1056 (1907) where, referring to the constitutional mandate and resultant exemption statutes, it said the object of the homestead exemption was to preserve the home for the benefit of the family as a whole. Justice Corliss separately concurring in *Rosholt,* opined that while the family exists as a unit the homestead belongs to the family, but after the family unit is destroyed by divorce the homestead must vest exclusively in either the husband or the wife. The more recent case of *Albrecht v. Albrecht,* 99 N.W.2d 229 (N.D.1959), recalling the language of *First International Bank v. Lee,* 25 N.D. 197, 141 N.W. 716 (1913) to wit:

> "The law does not look upon the right to exemptions as a personal right of the husband, or even being given to the husband at all. It is a family right rather than a personal right",

held that the exemption laws are enacted for the benefit of the family as a whole. 99 N.W.2d, at 235. Bankruptcy courts have adopted this view as well. In *D'Avignon v. Palmisano,* 34 B.R. 796 (D.Vt.1982) it was held that the reason for a homestead is to preserve a home for a family and there can be only one homestead per family. Similarly, in *In re Lambert,* 34 B.R. 41 (Colo.1983) the court held there can be only one homestead exemption per a specific piece of property. Our own court in *In re Reisnoar,* 49 B.R. 406 (Bankr.N.D.1985), aff'd 56 B.R. 225 (D.N.D.1985) noted that the homestead exemption is particular to the head of a family and that when the exemption is declared by one spouse it benefits both. Under North Dakota law, a homestead interest cannot in the technical sense be regarded as an interest in the land itself. Rather it is merely a right of exemption accorded to a certain class of persons for the benefit of the family.

The right to avail oneself of the homestead exemption otherwise available under North Dakota Law may be adjusted by state courts in consequence of issuing a divorce decree. Section 14-05-25 of the North Dakota Century Code provides in part that:

> "The court, in rendering the decree of divorce, may assign the homestead or such a part thereof as to the court may seem just, to the innocent party, either absolutely or for a limited period, according to the facts in the case and in consonace with the law relating to homesteads."

The only law pertaining to homesteads in North Dakota is as regards the right to declare a certain tract of land as exempt. Thus, the reference to homestead in section 14-05-25 must be to the power of the divorce court to divest a spouse of his or her homestead rights as those rights are defined in chapter 28-22. The Supreme Court in *Novlesky v. Novlesky,* 206 N.W.2d 865 (N.D.1973); *Ferguson v. Ferguson,* 202 N.W.2d 760 (N.D.1972) and *Dahl v. Dahl,* 97 N.W.2d 844 (N.D.1959) held that section 14-05-25 gives to a divorce court the power in a divorce case to *award the homestead.* These cases in recognizing the power exercised by a divorce court do not appear to attach any significance to the particular language of the divorce decree itself. The divorce decrees in *Novlesky* and *Dahl* in awarding the house referred only to a particular tract without even employing the term, "homestead"; yet the Supreme Court regarded these awards as an assignment of homestead under section 14-05-25. Accordingly, in the case at bar, no significance is given to the fact that the

254

decree itself does not use the word, "homestead". The North Dakota District Court by awarding Pamela the "home located in Wishek" was awarding her the homestead pursuant to section 14–05–25. Indeed, the Supreme Court long ago in *Rosholt* said that the interest of the respective parties in the homestead should be fixed by the divorce decree and Justice Corliss in his concurring opinion said that although a right to homestead may survive the divorce it cannot vest in both parties, it must vest exclusively in one or the other. In the Ninth Circuit case of *In re White*, 727 F.2d 884 (9th Cir.1984) the appellate court noted that where exclusive possession of the family home is awarded to the wife, there is no remaining purpose for a homestead exemption in the same property to vest in anyone else because the purpose of the exemption is to preserve the family home, a purpose which can be accomplished by the wife who can, herself, claim the exemption. The May 23, 1985, divorce decree had as its effect to bifurcate the legal interests in the home, leaving the debtor with bare legal title. The divorce decree did more than that, however, it assigned Pamela the homestead as that term is defined under North Dakota law. This assignment was meant to preserve in her as head of the family, the ability to exempt the family home for the benefit of herself and the minor children. Once the homestead was assigned to her by operation of the decree she became vested with the exclusive right to declare the exemption. As noted in *In re Lambert, supra*, there can be only one homestead exemption per a specific piece of property. At the time of filing the bankruptcy petition, the debtor had only a legal interest in the house and was essentially the trustee for Pamela's equitable interest. The house was no longer subject to his claim of homestead, that right having been previously assigned by the divorce court to Pamela. The quit claim deed given to Pamela in July, 1985, did nothing more than to restore to her legal title. It could not operate as a transfer free and clear of liens because applicable non-bankruptcy law had previously divested the debtor with

the right to declare a homestead exemption in the property.

Accordingly, and for the reasons stated, the court concludes that the debtor cannot invoke section 363(f) of the Bankruptcy Code in order to convey the property described as Lots five (5) and six (6), Block forty-six (46) in the City of Wishek, State of North Dakota free and clear of the liens held by the judgment lien creditors including those of Farmers Union Oil Company and the Security State Bank of Wishek. If the judgment liens are to be avoided, they must be avoided under state law by Pamela, who was the spouse assigned the homestead by the North Dakota State District Court. For the reasons herein set forth, the complaint of Darwin Fandrich is DISMISSED. Judgment may be entered accordingly.

SO ORDERED.