**In re CENTRAL MEDICAL CENTER, INC., Debtor.**

**Bankruptcy No. 88–00715–BSS.**

United States Bankruptcy Court, E.D. Missouri, E.D.

Dec. 13, 1990.

Kimball R. McMullin, Daniel E. Claggett, St. Louis, Mo., for Boatmen's Nat. Bank of St. Louis.

Steven M. Wallace, East St. Louis, Ill.

Richard G. Hughes, St. Louis, Mo., for debtor.

John A. Christy, Atlanta, Ga.

David P. Aplington, St. Louis, Mo.

## MEMORANDUM OPINION AND ORDER

BARRY S. SCHERMER, Bankruptcy Judge.

## INTRODUCTION

This case involves issues arising from a confirmation hearing of the First Amended and Restated Plan of Reorganization (the "Plan") filed by a group of six persons (the "Proponents")[1]. During a hearing on November 29, 1990, the parties, by agreement, presented only their arguments on all questions of law relating to plan confirmation except for those under Section 1129(a)(11). As requested by all parties in interest, the court reserved a hearing on evidence and testimony regarding this section pending the outcome of this Opinion. The objections raised by a committee of bondholders (the "Committee"), Central Medical Center, Inc. (the "Debtor"), and Boatmen's National Bank of St. Louis as Indenture Trustee ("Boatmen's"), present the following three issues:

1. Whether the Debtor and the Committee have standing to object to the Plan;
2. Whether the Plan impermissibly discriminates against the bondholders in violation of Sections 1123(a)(4) and 1229(a)(1) of the Bankruptcy Code; and
3. Whether a bond reserve fund is property of the estate, thus enabling the

---

**1.** The Proponents include C. Randall Faires, Donald M. Sather, Herb Fischer, Theron T. Chapman, Morton J. Kent, and W.L. Carey.

Proponents to utilize the fund for purposes other than that for which the fund was originally intended.

## JURISDICTION

This Court has jurisdiction over the subject matter of the proceeding pursuant to 28 U.S.C. §§ 151, 157, 1334, and Local Rule 29 of the United States District Court for the Eastern District of Missouri. The parties have stipulated that this is a "core proceeding" which this Court may hear and enter appropriate judgments pursuant to 28 U.S.C. § 157(b)(2)(L).

## DISCUSSION

I. Standing of the Debtor and the Committee

A. *Standing of the Debtor*

The Proponents argue that the Debtor lacks standing to object to the Plan. They cite *In re Johns–Manville Corp.*, 68 B.R. 618 (Bankr.S.D.N.Y.1986) and *In re Fondiller*, 707 F.2d 441 (9th Cir.1983), for the proposition that a party has standing to object only to that part of a plan which affects its interests. The Debtor has objected to the Plan, alleging that it unfairly discriminates against Class 7 unsecured trade creditors and precludes Class 4 creditors from making their election pursuant to Section 1111(b). The Proponents argue that because the Debtor is not a creditor in any class, its interests are unaffected by the Plan. In addition, because the claimholders have voted in both number and dollar amount to accept the Plan, the Proponents argue that the Debtor is really protecting the interests of its management and employees, who aren't parties in interest.[2] Thus, they claim that the Debtor does not have standing to raise objections to provisions that do not affect it.

The Debtor has proffered two reasons why it has standing to object to the Plan. First, the Debtor asserts that if the Court were to adopt the Proponents' position, no

---

**2.** The Debtor is a not-for-profit Missouri corporation.

debtor would ever have standing to object to a plan of reorganization proposed by another party. The Debtor argues that because it filed for Chapter 11 protection, it has an undeniable right to participate fully in the complete bankruptcy process. Objecting to various provisions of a proposed plan of reorganization is but one facet of that participation. Second, while admitting that *Manville* supports the Proponents' position, the Debtor argues that the test employed by Judge Lifland is derived from the test for standing on appeal. Thus, it is not a principle that is fully applicable to bankruptcy proceedings. Additionally, the Debtor claims that *Manville* may have been driven more by facts than law as the debtor's present situation necessitated a rapid, expeditious confirmation process.

This Court is quite certain that the Debtor has standing to object to any and all provisions of the Plan. Section 1109(b) states: "A party in interest, including the debtor, ... may raise and may appear and be heard on any issue in a case under this chapter". The language of this statute therefore tends to negate the Proponents' assertion that this Court should determine the Debtor's standing on an issue-by-issue basis. The Proponents' argument also fails to account for the fact that any plan of reorganization by definition intimately affects the rights of the respective debtor. This is illustrated in the language of Section 1141(a), which clearly states that the provisions of a confirmed plan are binding upon the debtor. Additionally, common sense dictates that the Debtor should have standing to object to the Plan. The Debtor in the instant case is a business with an obligation to pay its creditors. The Proponents' Plan seeks to govern completely the means by which this is done. Given this fact, it is only just that the Debtor be given every opportunity to comment on a document (and generally participate in the process) that so intimately affects both its future and its rights. Finally, in the *Johns–Manville* case, *supra*, upon which the Proponents rely, Judge Lifland considered the objections to confirmation raised by all parties. In that case, he stated:

[I]n order to ensure that the interest of all parties in this proceeding have been protected, and because an objection by objection standing evaluation would be wasteful and counterproductive, this court has considered all the objections raised, regardless of the standing of the proponent. 68 B.R. at 624.

Furthermore, neither *Johns–Manville* nor *Fondiller*, *supra*, the other case upon which the Proponents rely, involved the issue of whether a debtor has standing to object to a plan. Thus, this Court concludes that the Debtor has standing and therefore a right to be heard on all issues relating to confirmation of the Plan.

### B. Standing of the Committee

The Proponents also contend that the Committee lacks standing to object to the Plan. They argue that because the bondholders voted to accept the Plan, the Committee cannot act contrary to the wishes of the bondholders that it represents. Thus, the Proponents urge this Court to disregard the Committee's objections to the Plan. Additionally, because the bondholders have overwhelmingly voted to accept the Plan, the Proponents argue that the Committee is estopped from asserting a position that is inconsistent with that vote. Finally, the Proponents state that the Committee has a fiduciary duty to represent the interests of its constituents. *In re Microboard Processing, Inc.*, 95 B.R. 283, 285 (Bankr.D.Conn.1989); *Bohack Corp. v. Gulf & Western Industries, Inc.*, 607 F.2d 258, 262 n. 4 (2nd Cir.1979); *Matter of Baldwin–United Corp.*, 45 B.R. 375, 376 (Bankr.S.D.Ohio 1983). Advocating a position contrary to that of its constituents, the Proponents argue, is a breach of that duty.

The Committee agrees that it has a fiduciary duty to the class it represents. However, it believes that part of this duty includes a duty to advise its constituents. Thus, the Committee argues that in raising its objections to the Plan, it fulfills the basic duty with which it is charged. In addition, the Committee contends that by raising its standing arguments, the Propo-

nents' are merely seeking to prevent this Court from hearing all issues related to Section 1129(a)(1).

This Court believes the Committee has standing to object to the Plan for three reasons. First, as was the case with the Debtor, the specific language of Section 1109(b) supports Committee standing. Second, while a majority of bondholders voted to accept the Plan pursuant to Section 1126(a), this Court does not ascribe to the view that because a committee's constituents have voted for pecuniary treatment under a plan, therefore they have waived their right (and thus the committee's right) to raise objections relating to Section 1129(a). In voting to accept the Plan, individual bondholders merely voted to accept the pecuniary treatment accorded them under the Plan. This does not mean that the Committee waived its rights to object to the means of implementing that treatment. Thus, in voting to accept a plan, the only provisions of Section 1129(a) under which a committee has waived its objection is subsection (a)(8), which governs plan modification and class acceptance. Finally, this Court believes that as part of upholding its fiduciary responsibility to its constituents, a committee has both a duty and an obligation to raise objections to any provision of a plan it deems violative of Section 1129(a). For example, an individual class constituent may ratify the economic treatment it receives under a given plan of reorganization. However, the plan may violate one of the subsections of Section 1129(a). This Court believes that in such a case, a committee has a duty to object to the Plan. Thus, for these three reasons this Court concludes that the Committee has standing to raise its objections to the Proponents' Plan pursuant to Section 1129(a).

## II. The Bond Fund as Property of the Estate

Section 601 of the Indenture of Mortgage and Deed of Trust ("Trust Indenture") created a Bond Fund, which consists of an Interest Account, a Principal Account, and a Redemption Account. Regarding the allocation and use of the proceeds of each account, Section 603 of the Trust Indenture states:

> Except as provided in Sections 602(g), 606 and 907 hereof, moneys in the Bond Fund shall be expended solely as follows: (a) moneys in the Principal Account to pay principal of the Bonds as the same mature and become due; (b) moneys in the Interest Account to pay interest on the Bonds as the same becomes due; (c) moneys in the Redemption Account to pay principal of, premium, if any, and accrued interest on the Bonds as the same become due upon redemption prior to maturity.

Section 607 of the Trust Indenture established a "Debt Service Reserve Fund" (the "Fund"), which consists of an "Institution Account" and a "Bond Proceeds Account". Moneys from these two accounts were to be used to make up deficiencies in the Principal Account and Interest Account. Finally, regarding the administration of the Trust Indenture, Section 701 of the Trust Indenture provides, in pertinent part:

> All moneys deposited with or paid to the Trustee for account of the Bond Fund, ... under any provision of this Indenture, and all moneys deposited with or paid to any Paying Agent under any provision of this Indenture shall be held by the Trustee or paying Agent in trust and shall be applied only in accordance with the provisions of this Indenture and the Agreement, and, until used or applied as herein provided, shall constitute part of the Trust Estate and be subject to the lien, terms and provisions hereof....

Article III, paragraph 4.3(d) of the Plan provides that all moneys in the Fund shall be used to cover costs and expenses related to modification of the loan documents and Bond Documents and the payment of Class 1 and Class 2 claims as may be approved and allowed by this Court.[3] In addition,

---

**3.** Class 1 consists of all administrative claims allowed under 11 U.S.C. § 503, including but not limited to compensation and reimbursement claims allowed under 11 U.S.C. § 330 and claims by professionals employed pursuant to 11 U.S.C. § 327. Class 2 is comprised of all allowed claims entitled to priority under 11

the Plan states that $300,000 is to be disbursed from the Fund to the reorganized Debtor to provide working capital for hospital operations.

Boatmen's has proffered several arguments in its objection to the Plan's proposed use of the Fund. However, Boatmen's main argument is that the Plan violates Section 1129(a)(1) in that it does not comply with all applicable provisions of the Bankruptcy Code. Boatmen's divides this argument into two components. First, it asserts that all money in the Fund is being held for the benefit of the bondholders and is not "property of the estate", as that term is defined in Section 541(a)(1). Boatmen's claims that while courts have construed this Section broadly, Section 541(a) may not be utilized to divest effectively a party of its rightful property. *See In re Butts,* 46 B.R. 292 (Bankr.N.D.1985). In addition, the debtor may succeed to no greater interest than it had prior to its filing for title 11 protection. *In re Baquet,* 61 B.R. 495 (Bankr.D.Mont.1986); *Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1213 (7th Cir.1984). Because the Trust Indenture gave the Debtor no legal or equitable rights in the Fund, it is not property of the estate under Section 541(a). Having concluded that the Fund is not property of the estate, Boatmen's next argues that disposition of the Fund is governed solely by the Trust Indenture rather than the Bankruptcy Code. In order to use the Fund as contemplated in the Plan, Section 1102 of the Indenture requires the consent of holders of not less than 51% of the aggregate principal amount of the bonds outstanding. Because the Proponents have made no showing of such approval of an amendment,[4] Boatmen's argues that this Court may not confirm the Plan.

In response to Boatmen's argument, the Proponents first argue that the broad interpretation of Section 541(a)(1) dictates that the Fund is property of the Debtor's estate. This Section provides that "property of the estate" includes all legal or equitable interests of the debtor. Under Section 607(c) of the Indenture, if the Debtor refinances or otherwise retires all of the bonds, the balance of the Fund is returned to the Debtor. Thus, relying on *In re Brown,* 734 F.2d 119 (2nd Cir.1984), the Proponents argue that the Debtor's reversionary interest is an equitable interest in the Fund that makes it property of the Debtor's estate. *See also In re Greer Stump Plumbing, Inc.,* 9 B.R. 181 (Bankr.Ariz.1981); *Segal v. Rochelle,* 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966).

Second, the Proponents argue that the terms of the Plan rather than the Trust Indenture govern the bondholder's acceptance of their treatment under the Plan. The Proponents contend that when the bondholders voted to accept the Plan, the Indenture was modified to become consistent with the treatment under the Plan. Specifically, it is Section 1126 of the Bankruptcy Code, rather than the original debt instrument, which permits the amendment of the terms of Trust Indenture. In addition, Section 1141(a) expressly provides that upon confirmation, all non-voting shareholders are bound by the plan. Thus, the Proponents argue that both by the terms of the Plan and by operation of law, the Committee, by virtue of the bondholders' vote, has agreed to the treatment afforded them by the Plan. Finally, pursuant to Sections 1123, 1126, 1129, 1141, and 1142, the Proponents argue that this Court may confirm and implement a plan that has been accepted and by its terms requires "modification of any indenture or similar instrument". Section 1123(a)(5)(F). They assert that,

> [a]cceptance of a plan by an impaired class in accordance with Section 1126 constitutes a *de jure* amendment to underlying documents to make them consistent with the treatment under the Plan.

U.S.C. §§ 507(a)(3), (4), (5), and (6). The Debtor has represented that no Class 2 claims exist.

**4.** In contrast to the terms of the Trust Indenture, which require the approval of at least 51% of the bondholders, Section 1126(c) requires

approval of a plan by *inter alia,* "more than one-half in number of the allowed claims ... *that have accepted or rejected such plan".* (emphasis added).

Proponents' Brief at 9.

Thus, the Proponents argue that if underlying documents could be modified only in accordance with their terms, Sections 1126 and 1142 would be rendered meaningless and Section 1129(b) cramdown would be eliminated from the Code. In short, the Proponents ask this Court to find that the language of the Bankruptcy Code controls and supplants the applicable Trust Indenture provisions.

■ Section 541(a) of the Bankruptcy Code states that property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case". As this language indicates, the scope of this Section is very broad. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983); *In re Graham*, 726 F.2d 1268, 1270 (8th Cir.1984); *In re Titan Energy, Inc.*, 837 F.2d 325, 329 (8th Cir. 1988). However, the breadth of this language is not limitless. In *Whiting Pools*, the Supreme Court stated that Congress did not intend to include within this definition property of another in which the debtor holds only a "minor interest such as a lien or bare legal title". 462 U.S. at 204 n. 8, 103 S.Ct. at 2313 n. 8. Courts also have held that Congress did not intend Section 541 "to enlarge a debtor's rights against others beyond those existing at the commencement of the case". *In re N.S. Garrott & Sons*, 772 F.2d 462, 466 (8th Cir. 1985). Thus, a debtor may not use Section 541(a) to divest another of property to which they rightfully have title. *In re Butts*, 46 B.R. 292, 297 (Bankr.D.N.D. 1985).

■ Given that the bond indebtedness had not been completely satisfied as of the date of the Debtor's filing for Chapter 11 protection,[5] this Court agrees with the Proponents' assertion that, pursuant to section 607 of the Trust Indenture, the Debtor had a reversionary interest in the Fund as of the commencement of the case. Section 541(d) states that property in which the

debtor holds a legal but not equitable interest becomes property of the estate only to the extent of such interest. *In re B.I. Financial Services Group, Inc.*, 854 F.2d 351, 354 (9th Cir.1988). Thus, as of the commencement of its case, the Debtor held only a reversionary interest in the Fund. The Plan seeks to use the proceeds of the Fund for administrative expenses and working capital. Had the Debtor not filed for bankruptcy relief, it would not have had access to the Fund until all of its bond indebtedness had been satisfied. In short, through the bankruptcy process the Proponents seek to expand the estate's reversionary interest to a present possessory interest in the entire Fund. Thus, the Plan seeks to expand the estate's interest in the Fund from that which the Debtor held at the instant before the filing of this case. Because the Plan violates Section 541(a) due to its improper expansion of the estate's interest in the Fund, this Court must conclude that it fails to satisfy Section 1129(a).

■ The Plan also violates this section in that it baldly seeks to divest the bondholders of property which is rightfully theirs. Section 701 of the Trust Indenture provides, in pertinent part:

> All moneys deposited with or paid to the Trustee for account of the ... Debt Service Reserve Fund ... and all moneys deposited with or paid to any Paying Agent under any provision of this Indenture *shall be held by the Trustee or Paying Agent in trust* and shall be applied only in accordance with the provisions of the Indenture and the Agreement, and, until used or applied as here provided, *shall constitute part of the Trust Estate and be subject to the lien, terms and provisions hereof.* (emphasis added).

Thus, the language of the Indenture makes it quite clear that the proceeds of the Fund were to be held in trust and as part of the Trust Estate for the bondholders' benefit. This Court can scarcely imagine a case in

---

5. The Debtor had approximately $22,000,000 of bond indebtedness at the time of the filing of this Chapter 11 case.

which funds were more specifically held and earmarked for a given class of claimants. The Proponents have failed to show, by clear and convincing evidence, that the proceeds of the Fund are property of the estate. *First Nat'l Bank of Clinton v. Julian*, 383 F.2d 329, 339 (8th Cir.1967); *In re Dolphin Titan Int'l, Inc.*, 93 B.R. 508, 512 (Bankr.S.D.Tex.1988) (citing *Bank of Clinton*). Because the Plan seeks to expand the Debtor's interest in the Fund and, in complete contravention of the terms of the Trust Indenture, to divert proceeds of the Fund from its intended beneficiaries to a completely new class of creditors, this Court cannot authorize, condone, or allow the Plan's proposed use of the Fund. To do otherwise would constitute "bad law and worse logic".[6] *Carter Baron Drilling v. Excel Energy Corp.*, 76 B.R. 172, 174 (D.Colo.1987) (quoting *Stone v. Hole*, 75 Colo. 115, 116, 223 P. 1085 (1924)).

### III. Discrimination Under The Plan

■ The Plan proposes to divide all creditors into seven classes. Class 4 consists of the secured claims of those persons holding bonds issued by the Health and Education Facilities Authority of the State of Missouri and secured by the Debtor's hospital facility. Any deficiency arising from these claims becomes a Class 7 claim. Class 7 consists of unsecured creditors and is composed primarily of trade creditors and any Class 4 deficiency claims. Each of these two classes has voted to accept the Plan. In order to satisfy the Debtor's indebtedness to the bondholders, the Plan establishes a mandatory redemption schedule under which a given number of bonds are randomly selected by the trustee to be redeemed each year. Redemption of the bonds is scheduled to take place between 1997 and 2011. Interest will accrue at 6% per annum from the date of confirmation through December 1, 1992, and will be paid on a contingent cash flow basis.[7] After

this date, interest will be payable monthly at a rate of seven percent, and will increase to eight percent within three years.

The Debtor claims that this aspect of the Plan unfairly discriminates between bondholders in violation of Section 1123(a)(4) because under such a lottery system those bondholders who are chosen first will receive an interest rate different from those bondholders chosen to be paid later. Additionally and relatedly, those first receiving payment enjoy a greater present value of their claim than those paid later. Because under the mandatory redemption system bondholders receive different amounts of money, the Debtor contends that the Plan fails to provide the bondholders with equal treatment under Section 1123(a)(4). Thus, the Plan is rendered unconfirmable under Section 1129(a)(1).

In contrast to the Debtor's position, the Proponents argue that "same treatment" under Section 1123(a)(4) simply means that all members of a class must be subjected to the same procedure. Here, the Plan affords all bondholders the opportunity to participate in the same random lottery system. The fact that some may ultimately receive more money than others is merely a consequence of a system that was applied equally to all members of that class. Thus, by placing all class members within the same system, the Plan complies with Section 1123(a)(4) and therefore does not violate Section 1129(a)(1).

Section 1123(a)(4) provides:

(a) Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall—

    (4) provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest;

In other words, unless otherwise consented to, a plan of reorganization must treat all

---

6. While it recognizes the hardship which this decision may impose upon the implementation of the Plan, this Court refuses to rule contrary to law and logic simply to achieve a given result.

7. The Plan contemplates the issuance of non-negotiable promissory notes to Class 4 claimants in the amount of the unpaid, accrued interest. The Proponents project that the reorganized Debtor will never pay any of the contingent interest under these notes.

members of the same class equally. The parties have presented the issue of whether Section 1123(a)(4) requires a plan to subject class members to the same process for claim satisfaction, or whether that process must yield the same pecuniary result for each class member. This Court chooses the former interpretation. The Debtor argues that the Plan's "lottery" system unfairly discriminates between class members because it yields differing financial results. However, this is directed merely to the consequences of the process, something which bondholders should have contemplated when they initially voted for the Plan. If the bondholders did not favor the treatment afforded them, they should have voted against the Plan from the outset. The Plan subjects each member of the class to the same process for claim payment. In other words, the Plan subjects all members of the same class to the same means of claim determination. This Court holds that this is sufficient to satisfy the requirements of Section 1123(a)(4). Thus, in this respect the Plan does not violate Section 1129(a)(1).

## CONCLUSION

Both the Debtor and the Committee have standing to raise objections to the Plan. Regarding those objections, the Plan utilizes the Fund in violation of section 541(a) (and therefore Section 1129(a)(1)) in that it seeks to enlarge the estate's interest in the Fund and seeks to divest the bondholders of property which is rightfully theirs. However, the Plan's mandatory bond redemption system, which on a yearly basis provides for random selection of bonds for repayment, does not violate section 1123(a)(4). Accordingly, it is

ORDERED that Confirmation of the First Amended and Restated Plan of Reorganization is DENIED;

IT IS FURTHER ORDERED that the parties shall appear before this Court on Wednesday, December 19 at 9:00 a.m. for additional proceedings.